ESSEX CRANE RENTAL CORPORA-TION, Plaintiff,

v.

VIC KIRSCH CONSTRUCTION COMPA-NY, INC., Bethlehem Steel Corp., and The Hunter Corp., Defendants.

No. 77 Civ. 3680–CSH.

United States District Court,
S. D. New York.

Feb. 21, 1980.

Grossman & Zafrin, P. C., New York City, for plaintiff; Morton Grossman, New York City, of counsel.

Emmet, Marvin & Martin, New York City, Dennis C. Fleischmann, New York City, of counsel, Komyatte & Freeland, P. C., Hammond, Ind., Richard P. Komyatte, Hammond, Ind., of counsel, for defendants.

## MEMORANDUM OPINION AND ORDER

HAIGHT, District Judge:

This is an action for breach of contract, fraud, failure to account and negligence· arising under an equipment rental agreement. Jurisdiction in this Court is based on diversity of citizenship. Defendants move pursuant to 28 U.S.C. § 1404(a) for an order transferring the action to the United States District Court for the Northern District of Indiana on the ground of forum non conveniens, or, alternatively, pursuant to F.R. Civ.P. 12(b)(2) for an order dismissing the action in respect of two of the defendants for lack of personal jurisdiction. Plaintiff opposes the motion in both respects and concurrently moves pursuant to F.R.Civ.P. 26(c) for a protective order in respect of

defendants' interrogatories and request for production. Defendants oppose this application. For the reasons stated herein, defendants' motion is granted and the action is transferred to the Northern District of Indiana. In these circumstances, plaintiff's motion is denied without prejudice to its reinstitution in that district.

I.

Plaintiff Essex Crane Rental Corporation ("Essex") is a New York corporation with its principal place of business in New York City. Defendants Vic Kirsch Construction Co., Inc. ("Kirsch") and The Hunter Corporation ("Hunter") are Indiana corporations with their principal places of business in Hammond, Indiana. Defendant Bethlehem Steel Corporation ("Bethlehem") is a Delaware corporation with its principal place of business outside New York State.

Essex is in the business of leasing heavy industrial cranes and attendant equipment throughout the United States. In December, 1974, Essex and Kirsch entered into a rental agreement[1] for the use of a 200 ton Manitowac Vicon Liftcrane equipped with 220 foot boom and a 150 ton block, ball and hook. Complaint, ¶¶ 6–7. Essex alleges that the rental period commenced on December 16, 1974 and continued up to and including April 6, 1977 and that under the terms of the agreement Kirsch was obligat-ed to pay Essex the sum of $8,500 per month based upon a single shift operation of eight hours per day and forty hours per week. Id. at ¶¶ 8–9.

The complaint sets forth five claims. As against Kirsch, Essex alleges (1) breach of the rental agreement arising out of Kirsch's failure to remit rental payments in the amount of $23,233.36 for the period January 14, 1977 to April 6, 1977, id. at ¶ 10; (2) a claim for an indeterminate amount above the stipulated rent arising from use of the crane in excess of the single shift operation, id. at ¶¶ 12–16; (3) fraud arising from Kirsch's misrepresentations and failure to make disclosures relating to such alleged excess use, id. at ¶¶ 17–21; and (4) the existence of an account stated between Essex and Kirsch in the amount of $23,233.36, and Kirsch's failure to pay same, id. at ¶¶ 22–24.

As a fifth claim against all three defendants, Essex alleges that the subject crane was "operated and/or controlled and/or supervised . . . in a negligent, improper and reckless manner, causing physical and property damage to same requiring necessary repairs thereto prior to succeeding use thereof." Id. at ¶ 27. More specifically, Essex alleges at ¶ 28:

"That the defendants, or either [sic] of them, their servants, agents and/or em-

---

1. The form of the rental agreement remains unclear on the present record. Although the complaint at ¶ 6 recites that "on or about the 13th day of December, 1974, plaintiff entered into an agreement with the defendant [Kirsch]," and although further references to specific terms of that agreement appear throughout the complaint, no writing memorializing the purported agreement is made an exhibit to the complaint. Indeed, Kirsch expressly alleges that it entered into an *oral* agreement in December 1974. Counterclaim, ¶ 9. Yet, plaintiff attaches as Exhibit A to the Affidavit of Morton Grossman, sworn to on June 5, 1979 ("Grossman Affidavit") a copy of a written "equipment lease" dated December 13, 1974 which names Essex as lessor and Kirsch as lessee. Significantly, however, the document is not executed by either party, although to some extent the terms which appear therein track the terms of the rental agreement referred to by Essex and Kirsch in their respective pleadings. At the same time, it is clear that the parties agreed that the second years' rental would be at the rate of $8,500, Counterclaim, ¶ 12; Grossman Affidavit at p. 2; but ¶ 3 of the "equipment lease" recites that after the first year the "base monthly rental rate" would be $7,500. Thus, at the very least, the operative agreement was modified in some fashion which is not reflected in any writing supplied to the Court. Moreover, the base uncertainty regarding the form—oral or written—of the original agreement remains. Curiously, Kirsch does not address Exhibit A to the Grossman Affidavit. A determination of the particular form which the operative agreement takes is necessary only insofar as plaintiff's point regarding ¶ 9 of the version of agreement bears on the instant motions. See text at pages 25–26. However, given the view I take of the case, I am willing to assume without deciding that the written agreement controls for the limited purpose of assessing the weight to be accorded ¶ 9 in disposing of the motion to transfer the action. See text at p. 539.

ployees were negligent in the use and operation of said crane, rig and equipment; in causing, allowing and permitting and failing to prevent its use and operation contrary to agreement, specifications, standards, and proper accepted usage; in using same beyond and other than normal lift work in excess of rated capacities and usages; in failing to properly and adequately maintain, lubricate, repair, trasnport [sic], inspect, operate and supervise said crane, rig and equipment; in failing to properly protect and/or supervise said crane from its misuse and damage resulting therefrom."

Defendants have answered and Kirsch has counterclaimed for incidental damages in the sum of $9,122 suffered in connection with repairs, storage and painting of the crane. Specifically, Kirsch alleges that Kirsch and Essex entered into a twelve month lease of the crane at $8,000 per month for the purpose of enabling Kirsch to re-rent it, with the knowledge of Essex, to Bethlehem at its Burns Harbor, Indiana mills. Counterclaim, ¶ 9. Kirsch alleges that on delivery the crane was not in proper working order, requiring repair work by Kirsch to the crane house and heat exchanger in the amount of $835. *Id.* at ¶ 11.

In December 1975, Kirsch alleges, Bethlehem requested an additional twelve months' use of the crane, whereupon Kirsch and Essex agreed to an additional year's lease with an increased rental in the amount of $8,500 per month. *Id.* at ¶ 12. Both the sublease between Bethlehem and Kirsch and, pursuant to its terms, the original rental agreement terminated on January 17, 1977. *Id.* at ¶ 13. Kirsch claims it expended $3,271 for parts and labor over the lease term to correct problems of normal wear and tear, for which repairs Essex was responsible but which were not performed, entitling Kirsch to damages of $2,341, representing a percentage of the parts expense which are said to have placed the crane in substantially better condition than when received. *Id.* at ¶¶ 14–15. Further, Kirsch alleges that on instructions of Essex, it assisted an independent painting contractor and was required to repeat the process of

loading the crane on trucks as requested by Essex in order to comply with state maximum weight requirements for which Kirsch demands reimbursement of $685 and $490, respectively. Lastly, Kirsch claims it was forced to store the crane in its yard due to Essex's failure to forward shipping and loading instructions until some 2½ months after termination of the lease. Kirsch demands $1,500 in damages in this regard. *Id.* at ¶ 18.

As noted, there are two motions pending before the Court. Defendants Kirsch, Hunter and Bethlehem move pursuant to 28 U.S.C. § 1404(a) for an order transferring the action to the United States District for the Northern District of Indiana, or, in the alternative, Kirsch and Hunter move pursuant to F.R.Civ.P. 12(b)(2) to dismiss the complaint as against them for lack of personal jurisdiction. Plaintiff moves pursuant to F.R.Civ.P. 26(c) for a protective order in respect of interrogatories and a request for production propounded by defendants. Given the view I take of the case, it is unnecessary to reach defendants' Rule 12(b)(2) motion and plaintiff's Rule 26(c) motion is denied without prejudice. I therefore turn to consideration of defendants' motion for a change of venue.

## II.

Defendants' motion for a change of venue is controlled by Section 1404(a) which provides:

"For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." 28 U.S.C. § 1404(a).

Defendants' application is premised largely upon the expense and inconvenience in transporting necessary witnesses to this district if the matter is to be tried here. Plaintiff's opposition turns largely on the timing of defendants' motion. After considering the detailed submissions of the parties, I conclude that defendants have established that the balance of competing con-

veniences clearly favors the requested transfer.[2]

### A.

Defendants contend that none of the events which underlie the complaint occurred in the State of New York. Rather, defendants claim that the operative events which gave rise to the contract, to each alleged breach thereof and to each alleged tort committed in connection therewith all occurred in Indiana or, to a lesser extent, New Jersey. The only relation this suit has with this district, it is said, is that plaintiff maintains one of its four national offices in New York City, which office is staffed by one executive and one secretary.

More particularly, defendants maintain that the oral rental agreement was negotiated by telephone between Kirsch's office in Hammond, Indiana and the Fort Lee, New Jersey office of plaintiff. Further, defendants contend that all correspondence concerning the agreement was directed to or received from plaintiff's New Jersey office and, similarly, that all billings for rent due were sent from that office and all payments were mailed to and accepted by that office. This view is largely undisputed by plaintiff, which states that billings and payments were made "locally." Affidavit of Morton Grossman, sworn to on June 5, 1979 (the "Grossman Affidavit"), at p. 3.

In addition, defendants submit that as a result of deposition testimony, its counsel has learned that the sole witnesses who can testify on behalf of plaintiff regarding the contract are plaintiff's president and vice-president, Vincent A. Morano and Joseph A. Morano, respectively, who both reside in New Jersey. Affidavit of Richard P. Komyatte, sworn to on May 9, 1979 (the "Komyatte Affidavit"), at ¶¶ 6–7. These contentions remain undisputed by plaintiff.

Moreover, defendants contend that an extended investigation reveals that "all servicemen, laborers, oilers, operators, contrac-tors and inspectors who came into contact with the subject crane reside in or near the State of Indiana" and therefore are not subject to this Court's compulsory process. *Id.* at ¶ 8. See F.R.Civ.P. 45(e). More particularly, defendants have set forth the names and residences of thirteen Kirsch employees who "have first-hand knowledge of either the oral rental contract, or the condition, treatment, use and repair of the crane in question and, hence, will be necessary witnesses in the defense of the plaintiff's claims as well as in the prosecution of the counterclaim." Komyatte Affidavit at ¶ 11. Defendants describe the testimony of these proposed witnesses as follows:

"These witnesses will testify as to the condition, operation, maintenance, and repair of the crane. They will testify that the crane was initially received in a damaged condition and that substantial repairs were required before it could be placed in service. These witnesses will also testify as to the extraordinary repairs made during the period of the lease as well as to labor and storage costs involved at the conclusion of the lease. Some of these employees will testify in reference to the negotiations and correspondence leading up to the rental agreement, the subleases with the other defendants, and as to trade customs regarding leased industrial cranes." *Id.*

Additionally, defendants list six employees of Hunter and Bethlehem who reside either in the State of Indiana or within the subpoena power of the District Court for the Northern District of Indiana who will be called to testify on defendants' behalf as follows:

"These witnesses will testify as to the condition, operation, maintenance, and repair of the crane. They will relate the manner in which the crane was maintained and stored as being in accordance with standards of the industry. They will testify that no excessive lift work was attempted at any time and that the

---

2. Plaintiff does not question that the Northern District of Indiana is a district where the action "might have been brought," a prerequisite for a proposed transferee court under § 1404(a).

Defendants Kirsch and Hunter have their principal places of business within that district. Plaintiff's claim against Bethlehem arises out of alleged negligent acts committed in the district.

crane was always operated within its specified capacity. These witnesses will testify as to repairs which were beyond normal wear and tear and as to the nature of the construction projects for which the crane was used during the entire twenty four (24) month rental period." *Id.* at ¶ 12.

Defendants also intend to call as witnesses employees or agents of the painting contractor, W. Kendell and Sons of Wanatah, Indiana who reside within the Northern District of Indiana or in close proximity thereto who will testify regarding:

". . . the condition of the crane at the conclusion of the lease, the manner of storage of the crane in the yard of Vic Kirsch Construction Company, Inc. at the conclusion of the lease, and also as to the labor required by Vic Kirsch Construction Company, Inc. to assist this firm in repainting the crane." *Id.* at ¶ 13.

Further, defendants advise that their counterclaim also will be supported by testimony of agents and employees of International Transport, the trucking firm employed to transport the crane. Although they are not named, defendants submit that these potential witnesses can testify as to the loading and re-loading as well as storage and condition of the subject crane. Although International Transport is headquartered in Rochester, Minnesota, defendants inform the Court that the firm maintains an office at Channahon, Illinois, which is within the mileage limits for service of process emanating from the Northern District of Indiana. *Id.* at ¶ 14.

Additionally, defendants contend that employees of the crane's manufacturer, Manitowac Engineering Company of Manitowac, Wisconsin, inspected the crane at various times during the rental period and can offer testimony regarding the condition of the crane at the commencement of the lease, nature and extent of repairs performed during the lease term, the crane's normal capabilities and limits, wear and tear experience and industry standards of operation and maintenance. *Id.* at ¶ 15. It bears noting that plaintiff's counsel advises

that he also intends to call representatives of Manitowac. Grossman Affidavit at p. 6.

Thus, defendants conclude in order to properly defend against the main claims as well as to prosecute effectively their counterclaims, it would be necessary to transport, maintain and compensate approximately twenty-two witnesses. The total cost of bringing these witnesses to New York and maintaining them here during the trial—and comparing such cost to plaintiff's prayer for relief—it is said, "would literally make it impractical for defendants to properly present their defense to plaintiff's complaint and/or prosecute the counterclaim." *Id.* at ¶ 16. "In contrast," defendants add, "the only witnesses that plaintiff has who reside outside the State of Indiana are its corporate President and Vice-President." *Id.*

### B.

As previously noted, plaintiff's opposition to defendants' venue motion is largely grounded on its submission that the motion, coming just short of two years after the action was filed, is barred by laches and is solely motivated "to harass plaintiff, cause them [sic] unnecessary expense, and effect dilatory practice." Grossman Affidavit at p. 5.

Plaintiff also quarrels with the relevance of the offered testimony described hereinabove and argues that defendants ought to be relegated to securing depositions of their proposed witnesses. Moreover, plaintiff contends that defendants' "iteration of a list of thirteen individuals who 'will be necessary witnesses in the defense of the plaintiff's claims as well as in the prosecution of the counterclaim' is of no moment. At no time does he [defendants' counsel] state that these witnesses will actually be called to testify." Grossman Affidavit at p. 5. However, plaintiff concedes that "[w]hile these individuals may be of assistance in attempting to prove defendants' counterclaim, this cannot be the basis of a motion for change of venue." *Id.* at p. 6. Then switching tacks, plaintiff contends that defendants' "multiplicity of witnesses alleged

by defendants to be necessary, are in fact irrelevant to both the main action and defendants' interposed counterclaim." Reply Affidavit of Morton Grossman, sworn to on July 16, 1979, at p. 1. Moreover, plaintiff argues that the excessive use allegation "has been overwhelmingly manifested by testimony of defendants at the Examinations Before Trial, as well as the exhibits produced therein. Thus, to that allegation there can be no real issue of fact which would require the production of numerous individuals on behalf of defendants." *Id.* at pp. 1–2. "Furthermore," to plaintiff's way of thinking, "the necessity for defendants to bring in witnesses to demonstrate the purported non-negligent use of the subject crane has not been established. Instead, the negligent usage . . . will be sufficiently proven by expert witness [sic] on behalf of plaintiff [and] . . . will also be corroborated by exhibits . . . ." *Id.* at p. 2. Plaintiff concludes by repeating its view that the instant motion can only be viewed as a harassing tactic calculated to delay the expeditious trial of this action. *Id.* at p. 3.

### C.

The instant application requires consideration of several factors, none of which is controlling of its own force. As the Supreme Court observed in connection with its discussion of the common law doctrine of forum non conveniens,

"[w]isely, it has not been attempted to catalogue the circumstances which will justify or require the grant or denial of remedy. The doctrine leaves much to the discretion of the court to which plaintiff resorts, and experience has not shown a judicial tendency to renounce one's own jurisdiction so strong as to result in many abuses." *Gulf Oil v. Gilbert,* 330 U.S. 501, 508, 67 S.Ct. 839, 843, 91 L.Ed. 1055 (1947).

 Thus, plaintiff's opposition based upon the timing of the instant application reduces to but one of many considerations. First, it is clear that there is no *per se* rule prohibiting a change of venue merely be-

cause a motion to transfer is filed some time after suit is commenced and some progress is made on the pre-trial phase of the case. See *Poncy v. Johnson & Johnson,* 414 F.Supp. 551, 557 (S.D.Fla.1976); *Pesin v. Goldman, Sachs & Co.,* 397 F.Supp. 392 (S.D.N.Y.1975); *Molloy v. Bemis Bros. Bag Co.,* 130 F.Supp. 265, 268–69 (S.D.N.Y.1955); *Adler v. McKee,* 92 F.Supp. 613, 614 (S.D.N.Y.1950). As the court stated in *Farmer Brothers Co. v. Coca Cola Co. Inc.,* 366 F.Supp. 725 (S.D.Tex.1973):

"Defendant's most strenuous objection centers on the fact the litigation has progressed too far in this forum for plaintiff to seek a change. That argument in and of itself is not a factor preventing transfer. At times, it is far more preferable to change the forum at a stage later in the case when it may be ascertained with certainty that the interests of justice so dictate. Such is the case presented here." 366 F.Supp. at 727.

See also Moore, Federal Practice, 0.145[4.–3] at 1600–1601:

"No hard and fast rule should preclude the making of the motion at any time that does not operate to delay unduly the disposition of the action. Indeed, since Sec. 1404(a) looks to sound judicial administration, a court is not foreclosed from ordering a transfer whenever the factors enumerated in the statute are made to appear, whether this is at an early stage of the action or at a much later point of time."

 Although plaintiff is correct in arguing that delay in moving to change venue can be a factor justifying a denial of such application, *id.,* plaintiff has failed to show how it will be prejudiced by having to litigate elsewhere. Allegations of hardship "unsupported by particulars by way of proof or affidavit cannot be accorded much weight in balancing conveniences." *Hostetler v. Baltimore & Ohio R. Co.,* 164 F.Supp. 72, 74 (W.D.Pa.1958). In these circumstances, it seems to me, former Chief Judge Edelstein's reasoning in a case where a motion to transfer, originally denied and subsequently renewed after the case had been pending for over two years, is compelling:

"Plaintiff's claim that defendant is guilty of laches in bringing this motion eleven months after pre-trial procedures were completed fails for the reason that, conceding arguendo the inordinate delay, plaintiff has made no showing of prejudice to itself resulting from the delay." *General State Authority v. Aetna Cas. & Sur. Co.*, 314 F.Supp. 422, 424 (S.D.N.Y. 1970).

Of course, plaintiff's contention that "added legal, traveling and legal expenses [will] be incurred," plaintiff's Supplemental Memorandum at 2, is a factor to be measured along with all other relevant considerations, among which, I might add, counsel's convenience is not counted. *Vaughn v. American Basketball Assn.*, 419 F.Supp. 1274, 1277 (S.D.N.Y.1976); *Haase v. Mallenkrodt*, 415 F.Supp. 889, 890 (S.D.N.Y.1976).

Despite its expressed reticence in cataloguing the pertinent factors, the Supreme Court described the required analysis in *Gulf Oil* as follows:

"If the combination and weight of factors requisite to given results are difficult to forecast or state, those to be considered are not difficult to name. An interest to be considered, and the one likely to be most pressed, is the private interest of the litigant. Important considerations are the relative ease of access to sources of proof; availability of compulsory process for attendance of unwilling, and the cost of obtaining attendance of willing, witnesses . . . and all other practical problems that make trial of a case easy, expeditious and inexpensive. . . The court will weigh relative advantages and obstacles to fair trial. It is often said that the plaintiff may not, by choice of an inconvenient forum, 'vex,' 'harass,' or 'oppress' the defendant by inflicting upon him expense or trouble not necessary to his own right to pursue his remedy. But unless the balance is strongly in favor of the defendant, the plaintiff's choice of forum should rarely be disturbed.

"Factors of public interest also have place in applying the doctrine. Administrative difficulties follow for courts when litigation is piled up in congested centers instead of being handled at its origin. Jury duty is a burden that ought not to be imposed upon the people of a community which has no relation to the litigation. . . . There is a local interest in having localized controversies decided at home. There is an appropriateness, too, in having the trial of a diversity case in a forum that is at home with the state law that must govern the case, rather than having a court in some other forum untangle problems in conflict of laws, and in law foreign to itself." *Gulf Oil Corp. v. Gilbert, supra*, 330 U.S. 508–09, 67 S.Ct. 843.

■ Before turning to an application of this analysis, defendants' burden in justifying transfer must be recognized. Clearly the burden is on defendants to establish that there should be a change of venue. It is not enough, without more, if the result is merely to shift the inconvenience from one party to another. *Van Dusen v. Barrack*, 376 U.S. 612, 646, 84 S.Ct. 805, 824, 11 L.Ed.2d 945 (1964) ("Section 1404(a) provides for transfer to a more convenient forum, not to a forum likely to prove equally convenient or inconvenient"). Drawing on the above-quoted language in *Gulf Oil, supra*, it has been held that the balance of conveniences must be strongly in favor of the moving party before a transfer will be ordered; C. Wright, A. Miller & E. Cooper, Federal Practice and Procedure: Jurisdiction (hereinafter "Wright") § 3848 at 248 (collecting cases).

As these commentators point out, it was predictable that many courts would apply the discussion of forum non conveniens in *Gulf Oil* to motions to transfer under section 1404(a) since, at the time of its enactment in 1948, the statute was regarded merely as a codification of the forum non conveniens doctrine. However, as the Supreme Court made clear in *Norwood v. Kirkpatrick*, 349 U.S. 29, 75 S.Ct. 544, 99 L.Ed. 789 (1955), transfers under section 1404(a) can be granted more freely than dismissals under forum non conveniens.

Despite these considerations, the early formulations of the movant's burden have survived. Wright § 3848. Similarly, it has been recognized that "[t]he courts have developed a bewildering variety of formulations on how much weight is to be given to plaintiff's choice of forum," *id.* at 239, and despite invocations of the *Gulf Oil* language, it is generally agreed that plaintiff's initial choice is no longer entitled to the significance which once attached under forum non conveniens analysis. *Id.* at 242–43 (citing cases).

The trend towards reducing the emphasis placed upon plaintiff's choice of venue has seen particular application when, as here, the operative facts upon which litigation is brought bear little or no material connection to the chosen district. *Credit Alliance Corp. v. Nationwide Mutual Ins. Co.*, 433 F.Supp. 688 (S.D.N.Y.1977); *Foster v. Litton Industries, Inc.*, 431 F.Supp. 86 (S.D.N.Y.1977); *Haase v. Mallenkrodt, Inc.*, 415 F.Supp. 889 (S.D.N.Y.1976).

Nevertheless, even according Essex's choice of forum "substantial weight," *St. Hilaire v. Shapiro*, 407 F.Supp. 1029 (E.D.N.Y.1976); *Henn v. Schiavone Construction Co.*, 401 F.Supp. 495 (E.D.N.Y.1975), I find that this case presents a "clear cut and convincing showing by defendant[s] that the balance of convenience weighs strongly in favor of the transferee court . . ." *General State Authority (of Pennsylvania) v. Aetna Cas. & Sur. Co.*, supra, 314 F.Supp. 422, 423 (S.D.N.Y.1970). See also *Star Lines, Ltd. v. Puerto Rico Maritime Shipping Authority*, 422 F.Supp. 1201, 1207 (S.D.N.Y.1978); *City of New York v. General Motors Corp.*, 357 F.Supp. 327, 328 (S.D.N.Y.1973).

The most compelling consideration presented in support of transfer of this action is the convenience of the witnesses who will be called to testify at trial. Of course, section 1404(a) looks to both party and non-party witnesses. *Saminsky v. Occidental Petroleum Corp.*, 373 F.Supp. 257 (S.D.N.Y.1974). In view of defense counsel's representations, which I take to have been made in good faith, that the witnesses enumerated in counsel's affidavit will be necessary to the defense of the main action and to the prosecution of Kirsch's counterclaim, I regard the suggestion of counsel for plaintiff that "[a]t no time does [defense counsel] state that these witnesses will actually be called to testify," Grossman Affidavit at p. 5, as more semantic than real.

Defendants have met their obligation to specify clearly the key witnesses to be called and the anticipated areas of their testimony. *Factors Etc., Inc. v. Pro Arts, Inc.*, 579 F.2d 215, 218 (2d Cir. 1978), *cert. denied*, 440 U.S. 908, 99 S.Ct. 1215, 59 L.Ed.2d 455 (1979); *Car-Freshner Corp. v. Auto Aid Mfg. Corp.*, 438 F.Supp. 82 (N.D.N.Y.1977); *Vaughn v. American Basketball Assn.*, 419 F.Supp. 1274 (S.D.N.Y.1976); *Riso Kagaku Corp. v. A. B. Dick Co.*, 300 F.Supp. 1007 (S.D.N.Y.1969). Although it is the nature of witnesses' testimony rather than their numbers which is important, *Vaughn*, supra, 419 F.Supp. at 1276–77; *Thomson & McKinnon v. Minyard*, 291 F.Supp. 573 (S.D.N.Y.1968), the testimony of at least some of the twenty-two potential witnesses seems essential to a determination of the issues raised by the complaint and counterclaim. Although plaintiff submits that there is no issue of fact with respect to the described testimony, this case is not before the Court on a motion for summary judgment. Thus, even "[a]ssuming, *arguendo*, that some of the testimony of the putative witnesses would be immaterial, or cumulative, and that the number of witnesses is exaggerated, . . . it would be unrealistic to doubt that the defense will require the testimony of numerous witnesses so listed." *General State Authority (of Pennsylvania)*, supra, 314 F.Supp. at 423.

By far the majority of defendants' witnesses reside in Indiana; most of the witnesses who do not reside within the Northern District of Indiana are amenable to compulsory process emanating from that district. Even accepting plaintiff's point that many of the witnesses are employees of defendants and that their attendance at trial could be secured voluntarily, the cost

and inconvenience of producing them for trial in this district is constant whether or not the witnesses are willing to attend. To the extent that the non-party witnesses—such as employees of the crane's manufacturer—are not subject to the subpoena power of either this Court or that of the Northern District of Indiana, the fact that compulsory process is not available in either district becomes a neutral factor. However, to the extent that Manitowac employees are willing to appear voluntarily, the expense in transporting them to the Indiana district court is considerably less than that required to bring them here. That plaintiff intends to call employees of Manitowac as part of its direct case does not diminish the weight of this consideration; section 1404(a) is intended to authorize transfer to accomplish the salutary purpose of reducing the burgeoning costs of litigation, no matter which party eventually bears the expense. In sum, the cost and inconvenience of transporting even some of the proposed witnesses to this district would grossly exceed the outlays necessary to litigate in the Northern District of Indiana.

Although it is not necessary to the determination I make herein, I note in passing that the Northern District maintains one division among others at Hammond, Indiana, where Kirsch and Hunter maintain their principal places of business and presumably near where many of the party witnesses reside. Manitowac, Wisconsin is within a few hours' drive of Hammond. In these circumstances, insisting that the trial of this action remain in this district, even if the case once transferred would be tried at one of the other divisions which comprise the Northern District of Indiana, would exalt plaintiff's choice of forum beyond all reason. Retaining the action in this district would add to the spiraling costs of litigation, an all-too-disturbing trend in general even where venue is laid in the most appropriate district from the point of view of efficiency and economy. Plaintiff's remaining arguments in opposition do little to detract from this view.

Plaintiff's objection to the timing of the instant motion, discussed hereinabove, does not affect the balance of conveniences. It is clear on this record that defendants' motion is based upon information which only came to light as a result of relatively recent discovery. Specifically, defendants claim that testimony elicited in the course of depositions taken in July and September, 1978 revealed for the first time that plaintiff intended to prosecute its tort claim alleged in the last count of the complaint, prior indications being that the gravamen of the complaint rested upon plaintiff's breach of contract theory. As a result, counsel submits that he was required to conduct an extensive investigation to learn the identity of the witnesses to and the nature of their knowledge regarding the events underlying the tort claim. This investigation, it is claimed, was not completed until the spring of 1979, in part due to other professional obligations, less than sixty days before the filing of the motion. Supplemental Affidavit of Richard P. Komyatte, sworn to on July 11, 1979 at 2–4.

In any event, it is clear that neither the thrust nor the timing of the instant application is intended to vex, harass or otherwise intimidate plaintiff. Given this view, I find little significance in the manner in which the matter was raised. Moreover, I note that the procedural history of this action includes an initial assignment to Judge Lasker in July 1977, a substitution of the present attorneys for defendants, a reassignment to Judge Sweet in June, 1978 and eventual reassignment to the docket of the undersigned in July 1978, all of which in small part may account for the timing of the motion to transfer. In these circumstances, I attach little weight to plaintiff's objection in this respect.

It is no surprise that plaintiff would prefer defendants to adduce the testimony they desire from the potential witnesses enumerated hereinabove by means of deposition. Additionally, it may well be that plaintiff has elicited much testimony which, in its view, supports the allegations of the complaint. However, none of the foregoing significantly weighs against transfer, given my finding that the balance of conveniences

favors trial in the Northern District of Indiana, where defendants can more expeditiously present their case. Indeed, insofar as retaining jurisdiction of this action will impede defendants in doing so, the interests of justice not only favor transfer, they virtually compel it. As to plaintiff's preference for presentation of the defense case by deposition transcripts, such an argument was dismissed in *General State Authority (of Pennsylvania), supra* :

> "Moreover, the interest of justice weighs strongly in favor of transfer. As noted, all of defendant's and two of plaintiff's five witnesses are beyond the jurisdiction of this court. Process, therefore, would be unavailable to compel the attendance of unwilling witnesses, and although an argument can be made for the use of deposition testimony, such testimony on key issues is a highly unattractive alternative to live testimony, the availability of which would not be in doubt should transfer be granted." 314 F.Supp. at 424.

Insofar as Essex contends that its convenience would be furthered by retaining the case here since its "business activities will be disrupted by the removal of its only two (2) officers by a protracted trial in Indiana," plaintiff's Memorandum of Law, p. 10, that contention was considered and rejected in *Molloy, supra,* 130 F.Supp. at 268. See also *Ford Motor Co. v. Ryan,* 182 F.2d 329, 330 (2d Cir.), *cert. denied,* 340 U.S. 851, 71 S.Ct. 79, 95 L.Ed. 624 (1950), and I ascribe little weight to the argument. To the extent plaintiff's principals will be actively engaged in the trial, that involvement will be required wherever the trial takes place. However more convenient to Essex's officers, their interest in litigating here does not outweigh that of defendants' twenty-two witnesses; if removal to Indiana will seriously disrupt Essex's operation, maintenance of the litigation here would no less disrupt the operation of Kirsch and Hunter. At best, plaintiff's point is neutralized by the disruption which would be visited upon defendants' operations if their motion was denied. Far more than merely shifting inconveniences from one party to another, refusing to transfer would impose a like inconvenience upon defendants, although to a significantly higher degree. Thus, I am unpersuaded that the disruption referred to by plaintiff tips the balance of convenience away from transfer of this action.

Nor do I read ¶ 9 of plaintiff's version of the rental agreement which recites in part that "[t]his contract is deemed to be made in New York," as compelling a different result. A valid contractual provision specifying the forum for any litigation which may arise under the contract may control venue in the first instance, but it cannot be decisive on a motion to transfer pursuant to 28 U.S.C. § 1404(a), given the range of factors which must be weighed on such application, only one of which—convenience of the parties—is affected by a forum-selection clause. See Wright § 3847 at 237. Of course, whatever its relevance to potential choice of law issues with respect to interpretation or application of the governing contract, the provision in question clearly does not purport to designate a particular forum in which the parties have agreed to conduct all litigation arising out of the equipment lease.

Plaintiff's reference to this clause appears in connection with its opposition to defendants' motion to dismiss for lack of personal jurisdiction in respect of Kirsch and Hunter. As stated, in view of the determination I reach on the transfer motion, I need not reach the issue of jurisdiction. It is appropriate to note that a serious question has been raised in this regard; but assuming that defendants are correct in their assertion that this Court lacks personal jurisdiction of Kirsch and Hunter, that would not preclude transfer of this action pursuant to section 1404(a). *Corke v. Sameiet M.S. Song of Norway,* 572 F.2d 77 (2d Cir. 1978).

In *Corke, supra,* the district court held it lacked personal jurisdiction over the defendants and thus concluded despite the holding in *Goldlawr v. Heiman,* 369 U.S. 463, 82 S.Ct. 913, 8 L.Ed.2d 39 (1962), that it had no power to transfer the action. In *Goldlawr,* the majority stated:

"The language of § 1406(a) is amply broad enough to authorize the transfer of cases, however wrong the plaintiff may have been in filing his case as to venue, whether the court in which it was filed had personal jurisdiction over the defendants or not." 369 U.S. at 466, 82 S.Ct. at 916.

The *Goldlawr* dissenters foresaw the problem of permitting transfer "where *both* venue and jurisdiction are lacking in the district court where the action is commenced, while neglecting to provide any comparable alleviative measures for the plaintiff who selects a district where venue is proper but where personal jurisdiction cannot be obtained." 369 U.S. at 468, 82 S.Ct. at 916 (Harlan, J., dissenting) (footnote omitted) (emphasis in original). The Second Circuit resolved this peculiarity in *Corke, supra,* by approving Judge Weinfeld's decision in *Volk Corp. v. Art-Pak Clip Art Service,* 432 F.Supp. 1179 (S.D.N.Y. 1977), where he declined to elect between reliance on section 1404(a) or 1406(a). Rather, he held that the court "has power to transfer the case even if there is no personal jurisdiction over the defendants, and whether or not venue is proper in this district, if a transfer would be in the interest of justice." *Volk Corp., supra,* 432 F.Supp. at 1181 and nn.4–5, *quoted in Corke, supra,* 572 F.2d at 80.

Indeed, transfer to a district where jurisdiction and venue are unquestionably proper is in the interests of justice and spares courts and parties the burdens of a litigation premised on possibly erroneous preliminary rulings unrelated to the merits. See *Columbia Pictures Industries, Inc. v. Schneider,* 435 F.Supp. 742, 748 (S.D.N.Y. 1977), *aff'd without opinion,* 573 F.2d 1288 (2d Cir. 1978).

Moreover, it is clear that at least plaintiff's negligence claim is governed by principles of Indiana substantive law, a subject with which the judges of the Northern District of Indiana no doubt are more conversant than this Court. Even if the issues are relatively simple and the state law clear, this factor is entitled to some consideration, see *Gulf Oil Corp., supra,* 330 U.S. at 509, 67 S.Ct. at 843, and further supports transfer.

■ Consideration must be given as well to the benefit to the public and the courts in having localized controversies decided in "home" forums. *Id.* The sole contact with this district is that Essex, a New York corporation, maintains its principal place of business here. On the other hand, Kirsch and Hunter are Indiana corporations with their principal places of business in Hammond, Indiana. None of the witnesses for any party, plaintiff or defendants, resides in New York. Although plaintiff's principals reside in New Jersey, within relatively easy reach of this district, the vast majority of defendants' witnesses reside in Indiana within or near the Northern District, or, in the case of other possible non-party witnesses, within reasonably close proximity thereto, compared with the distance from their residences to this district. Similarly, although the contract was negotiated by telephone, it appears to have been performed exclusively in Indiana, with billings and payments being sent to and received from Indiana. All of the operative events which underlie plaintiff's claims and Kirsch's counterclaims took place in Indiana. Taken together, these factors indicate a substantial relationship between the transferee district and the subject matter of this lawsuit, a relationship altogether lacking in this district. See *General State Authority (of Pennsylvania), supra,* 314 F.Supp. at 424. Therefore, I conclude, the balance of conveniences clearly weighs in favor of the requested transfer.

## CONCLUSION

For the reasons stated, defendants' motion pursuant to 28 U.S.C. § 1404(a) is granted and the action is transferred hereby to the Northern District of Indiana. Given this result, I need not reach defendants' alternative motion pursuant to F.R. Civ.P. 12(b)(2). Finally, plaintiff's motion pursuant to F.R.Civ.P. 26(c) is denied without prejudice to its renewal in the Northern District of Indiana.

The Clerk is directed to transfer this case to the Northern District of Indiana.

It is So Ordered.