**HUBBELL INCORPORATED, Plaintiff,**

v.

**PASS & SEYMOUR, INC. and Legrand, S.A., Defendants.**

No. 94 Civ. 7631 (RWS).

United States District Court,
S.D. New York.

May 18, 1995.

Darby & Darby, New York City (Martin
E. Goldstein, Ira Jay Levy, of counsel), for
plaintiff.

Zuckerman, Spaeder, Goldstein, Taylor &
Kolker, New York City (Lisa A. Cahill, of
counsel), for defendants.

Gadsby & Hannah by Paul F. Kilmer,
Thomas W. Brooke, Robert F. Garcia, Jr.,
Washington, DC, of counsel, for defendants.

## OPINION

SWEET, District Judge.

Defendants Pass & Seymour ("Pass") and
Legrand S.A. ("Legrand") have moved to
dismiss the federal and common law trade
dress claims of Plaintiff Hubbell Incorporat-
ed ("Hubbell") pursuant to Fed.R.Civ.Pro.
12(b)(6). In addition, Legrand has moved to
dismiss the action against it for lack of sub-
ject matter jurisdiction, lack of personal jur-
isdiction and lack of venue. In the alterna-
tive, Legrand moves for a change of venue to
the Northern District of New York. Pass
moves to dismiss the action for lack of venue
pursuant to 12(b)(3) or, in the alternative, to
transfer the claims to the Northern District
of New York. Hubbell has moved to dismiss
Count II of Pass' counterclaim (Intentional
Interference with Business Relationships)
pursuant to Rule 12(b)(6). For the reasons
set forth below, all motions are denied.

### The Parties

Plaintiff Hubbell is a Connecticut corpora-
tion that manufactures electrical products.
Its principal place of business is at 584 Der-
by Milford Road, Orange, Connecticut.

Defendant Pass is a New York Corpora-
tion doing business in the State of New York
and within this judicial district, having its
principal place of business at P.O. Box 4822,
Syracuse New York.

Defendant Legrand is a corporation orga-
nized and existing under the laws of the
country of France.

### Prior Proceedings

A complaint was filed in this action on
October 20, 1994 (the "original complaint")
and was later amended on December 14,
1994. The original complaint included two
defendants, New York City Distributors of
Pass and Legrand as defendants. According
to the Plaintiff, after the suit was filed, and
before Hubbell either served or notified the
Distributors of the existence of the lawsuit,
Hubbell learned that the Distributors, while
sellers of Pass' and Legrand's product line,
did not yet have available the products at
issue. Hubbell filed an amended complaint
(the "complaint") which does not name the
Distributors.

The complaint alleged three claims: 1) vio-
lation of § 32 of the Trademark Act of 1946,
15 U.S.C. § 1114; 2) violation of § 43(a) of
the Trademark Act of 1946 and 3) violation of
unfair competition under the common law of
the State of New York.

Pass filed an answer on December 23, 1994
which included affirmative defenses and
three counter claims. The counterclaims
sought: 1) declaratory relief as to the sales
of connectors and plugs "out of the box"; 2)
damages for intentional interference with
business relationships; 3) cancellation of the
Federal Trademark Registration for the des-
ignation "5965VY."

The Defendants' motions were filed in De-
cember 1994. Hubbell's motion was filed on
January 13, 1995. All motions were argued
on February 8, 1995. Defendants submitted
a Supplemental Memorandum on May 15,
1995 and the motions were considered fully
submitted at that time.

### The Facts

For the last seventeen years Hubbell has
sold various connectors and plugs in, what it
terms, its "famous and highly distinctive 'Va-
lise' Trade Dress." Hubbell claims that
since the introduction of the Valise Trade
Dress, sales of these connectors and plugs
have exceeded 33 million units and $50 mil-
lion. The subject of this litigation is a partic-
ular connector and plug, which has been

assigned the number 5965VY. This number appears on the connector. Hubbell claims that this number is a federally registered trademark of Hubbell.

The plug and connector had a design patent that has expired. There are no allegations that Defendants began to market their similar product prior to the expiration of the patent.

According to the complaint, the Defendants recently changed their line of plugs and connectors such that they are "virtually indistinguishable" from the "famous" Hubbell Valise Trade dress. According to Hubbell, the Defendants further aggravated the situation by misappropriating Hubbell's federally registered trademark 5965VY, and applying it directly to the virtually indistinguishable product.

### Discussion

### Motions to Dismiss the Trade Dress Claims Are Denied

■ On a Rule 12(b)(6) motion to dismiss, the factual allegations of the complaint are presumed to be true and all factual inferences must be drawn in the plaintiffs' favor and against the defendants. *See Scheuer v. Rhodes,* 416 U.S. 232, 236, 94 S.Ct. 1683, 1686, 40 L.Ed.2d 90 (1974); *Cosmas v. Hassett,* 886 F.2d 8, 11 (2d Cir.1989); *Dwyer v. Regan,* 777 F.2d 825, 828–29 (2d Cir.1985). Accordingly, the factual allegations set forth and considered herein are taken from the Plaintiff's Complaint and do not constitute findings of fact by the Court. They are presumed to be true only for the purpose of deciding the present motion to dismiss.

■ Rule 12(b)(6) imposes a substantial burden of proof upon the moving party. A court may not dismiss a complaint unless the movant demonstrates "beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *H.J., Inc. v. Northwestern Bell Tel. Co.,* 492 U.S. 229, 249–50, 109 S.Ct. 2893, 2905–06, 106 L.Ed.2d 195 (1989); *Hishon v. King & Spalding,* 467 U.S. 69, 73, 104 S.Ct. 2229, 2232–33, 81 L.Ed.2d 59 (1984); *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 101–02, 2 L.Ed.2d 80 (1957).

Section 43(a)(1) of the Lanham Act, 15 U.S.C. § 1125(a)(1) protects trade dress from infringement when:

> [a]ny person who, on or in connection with any goods or services, or any container for goods, uses in commerce any word, term, name, symbol, or device, or any combination thereof, or any false designation of origin, false or misleading description of fact, or false or misleading representation of fact, which—
>
> > (1) is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of such person with another person, or as to the origin, sponsorship, or approval of his or her goods, services, or commercial activities by another person. . . .

15 U.S.C. § 1125(a).

■ The "trade dress" of a product consists of "its total image", composed of "features such as size, shape, color or color combinations, texture, [or] graphics." *Paddington Corp. v. Attiki Importers & Distribs.,* 996 F.2d 577, 582 (2d Cir.1993), as quoted in *Merriam–Webster, Inc. v. Random House, Inc.,* 35 F.3d 65, 70 (2d Cir.1994). Such trade dress protection has been extended to product design and may include product configurations. *Le Sportsac, Inc. v. K Mart Corp.,* 754 F.2d 71 (2d Cir.1985).

As the Second Circuit has explained:

> To prevail on a trade dress claim, the plaintiff must demonstrate that the product's appearance has acquired "secondary meaning"—the consuming public immediately identifies the product with its maker—and that purchasers are likely to confuse the imitating goods with the originals. Even if the plaintiff establishes these elements, the defendant may still avoid liability by demonstrating that the imitated features are "functional"—essential to the basic purposes the article is meant to serve. *Two Pesos, Inc. v. Taco Cabana, Inc.,* —— U.S. ——, 112 S.Ct. 2753, 2760, 120 L.Ed.2d 615 (1992); *Coach Leatherware Co. v. AnnTaylor, Inc.,* 933 F.2d 162, 168 (2d Cir.1991) (citations omitted).

■ Hubbell has alleged sufficient facts to make out the elements of a trade dress in-

fringement claim. In Count II of the Complaint Hubbell states:

> By its acts alleged herein, defendant has falsely designated the origin or sponsorship of its electrical connectors and plugs and has caused and will cause them to be advertised and sold in commerce, in violation of § 43(a) of the Trademark Act of 1946, 15 U.S.C. § 1125(a)

Complaint at ¶ 23.

This Count is supported by the allegations of paragraphs 6–11 and 15–19 of the Amended Complaint (which must be taken as true for the purposes of this motion), which support (1) the inherently distinctive nature of the Valise Trade Dress; (2) sales, advertising, extent of use, and exclusivity sufficient to establish, as an alternative, the existence of secondary meaning in the Valise Trade Dress; and (3) intentional actions by Pass and Legrand in violation of these protectable rights likely to cause confusion among consumers. Pass has not challenged any of the specific allegations of the Complaint.

■ The core issue raised by Defendants in seeking a motion to dismiss this complaint is that Hubbell is unlawfully seeking to extend expired patent monopolies for its plugs and connectors through the device of the Lanham Act.

The different purposes of the two sets of laws supports the position that trade dress protection is not as a matter of law unavailable to products for which design patents have expired.

The purpose of the federal design patent law is "to encourage the invention of ornamental designs." *In re Honeywell Inc.*, 497 F.2d 1344, 1348 (C.C.P.A.), *cert. denied*, 419 U.S. 1080, 95 S.Ct. 669, 42 L.Ed.2d 674 (1974); *see Lon Tai Shing Co. v. Koch & Lowy*, 19 USPQ.2d 1081, 1991 WL 170734 (S.D.N.Y.1990).

More specifically, the Court in *Lon Tai Shing* explained that:

> More broadly viewed, the patent laws have three related purposes: "First, patent law seeks to foster and reward invention; second, it promotes disclosure of inventions, to stimulate further innovation and to permit the public to practice the invention

once the patent expires; third, the stringent requirements for patent protection seek to assure that ideas in the public domain remain there for the free use of the public." *Aronson v. Quick Point Pencil Co.*, 440 U.S. 257, 262 [99 S.Ct. 1096, 1099, 59 L.Ed.2d 296] (1979).

> This stands in clear contrast to the function of the trademark laws, particularly section 43(a) of the Lanham Act, which "seek[s] to prevent the public from encountering confusion, mistake, and deception in the purchase of goods and services and to protect the integrity of the trademark owner's product identity." *In re Honeywell, Inc.*, 474 [497] F.2d at 1348.

*Lon Tai Shing*, 19 USPQ.2d at 1106.

These two bodies of law were designed to serve quite different purposes and may operate separately and without unavoidable conflict. As noted by the *Lon Tai Shing* Court, 19 U.S.P.Q.2d at 1107, this point was underscored in the Supreme Court cases that represent the highwater mark of patent law supremacy—the so called *Sears–Compco* cases. *See Sears, Roebuk & Co. v. Stiffel Co.*, 376 U.S. 225, 84 S.Ct. 784, 11 L.Ed.2d 661 (1964); *Compco Corp. v. Day–Bright Lighting, Inc.*, 376 U.S. 234, 84 S.Ct. 779, 11 L.Ed.2d 669 (1964). In those decisions the Supreme Court held that the patent laws broadly preempt state trademark and unfair competition law insofar as it applies to industrial designs. Notwithstanding the breadth of the *Sears–Compco* cases ... the Supreme Court recently noted that:

> our decision in *Sears* clearly indicates that the States may place limited regulations on the circumstances in which such designs are used in order to prevent consumer confusion as to source. Thus while *Sears* speaks in absolutist terms, its conclusion that the States may place some conditions on the use of trade dress indicates an implicit recognition that all state regulations of potentially patentable but unpatented subject matter is not *ipso facto* preempted by the federal patent laws.

*Bonito Boats, Inc. v. Thunder Craft Boats, Inc.*, 489 U.S. 141, 154, 109 S.Ct. 971, 979, 103 L.Ed.2d 118 (1989).

The Supreme Court cases cited by both parties and discussed above involved questions of federal preemption. The existence of the Lanham Act, a separate and equally viable body of federal law supports without reservation the notion that the two bodies of law can, and in fact that Congress intended them to, co-exist.

The Seventh Circuit addressed the issue presented in this case and concluded that "[c]ourts have consistently held that a product's different qualities can be protected simultaneously or successively, by more than one of the statutory means for protection of intellectual property." *Kohler Co. v. Moen, Inc.*, 12 F.3d 632, 638 (7th Cir.1993). The Court continued:

> [F]ederal trademark protection does not transform the durationally limited monopoly of a design patent into a perpetual right. As we have noted, federal trademark protection for a product's configuration does not create a *monopoly* in the use of the product's shape. [Plaintiff] is not "free from effective competition in the market ..." [Plaintiff] simply has the right to preclude others from copying its trademarked product for the purpose of confusing the public as to its source.

12 F.3d at 640 n. 10 (emphasis in original); *see W.T. Rogers Co. v. Keene*, 778 F.2d 334 (7th Cir.1985), recognizing the absolute distinction between the two types of protection (trade dress and design patent), Judge Posner reasoned:

> provided that a defense of functionality is recognized, there is no conflict with federal patent law, save possibly with 35 U.S.C. § 171, which allows a 14–year patent to be granted for a nonfunctional ornamental design—a design patent. But the courts that have considered the issue have concluded, rightly in our view, that this section does not prevent the enforcement of a common law trademark in a design feature. See discussion in 1 Chisum, Patents § 1.04[6] (1985). The trademark owner has an indefinite term of protection, it is true, but in an infringement suit must also prove secondary meaning and likelihood of confusion, which the owner of a design patent need not do; there is therefore no neces-

sary inconsistency between the two modes of protection.

*Id.* at 337.

The parties have not identified any case in this Circuit on this issue and the conclusion reached by the Seventh Circuit and by Magistrate Judge Michael H. Dolinger in this District in *Lon Tai Shing* is adopted.

In a different context, involving the ability to obtain trademark protection for a color, the Supreme Court recently noted that:

> It is the province of patent law, not trademark law, to encourage invention by granting inventors a monopoly over new product designs or functions for a limited period of time, 35 U.S.C. §§ 154, 173, after which competitors are free to use the innovation. If a products functional features could be used as trademarks, however, a monopoly over such features could be obtained without regard to whether they qualify as patents and could be extended forever ... Functionality doctrine therefore would require, to take an imaginary example, that even if customers have come to identify the special illumination-enhancing shape of a new patented light bulb with a particular manufacturer, the manufacturer may not use that shape as a trademark, for doing so, after the patent had expired, would impede competition—not by protecting the reputation of the original bulb maker, but by frustrating competitors' legitimate efforts to produce an equivalent illumination-enhancing bulb. *See, e.g., Kellogg Co. [v. National Biscuit Co.], ...* 305 U.S. [111], at 119–120, 59 S.Ct. [109] at 113–114 [83 L.Ed. 73 (1938) ] (trademark law cannot be used to extend monopoly over the "pillow" shape of shredded wheat biscuit after the patent for that shape had expired).

*Qualitex Co. v. Jacobson Products Co., Inc.*, —— U.S. ——, ——, 115 S.Ct. 1300, 1304, 131 L.Ed.2d 248 (1995).

Defendants urge that this dicta in the *Qualitex* case should be considered by this Court. This may say no more than that

patents related to function may not be protected past the duration of the patent.[1]

In any event, this language from the Supreme Court can be read to be consistent with the proposition that while Hubbell cannot assert trade dress claims to protect *in toto* the design which was protected by the earlier design patent, the expiration of the design patent does not preclude a party from seeking to protect its reputation or avoid consumer confusion over products if it can demonstrate the required elements of a Lanham Act, or other non-conflicting unfair competition, claim.

Again, the fact that the federal patent and trademark laws have co-existed for decades, provides support for the proposition that the protections offered by them can exist together now. *See supra.*

These claims will not now be dismissed as a matter of law.

### A Sufficient Showing of Jurisdiction Has Been Made

■ In order to demonstrate personal jurisdiction sufficiently to defeat a motion to dismiss, a plaintiff need only make a *prima facie* showing that jurisdiction exists. *See Hoffritz for Cutlery, Inc. v. Amajac, Ltd.,* 763 F.2d 55, 57 (2d Cir.1985). Plaintiff's complaint and affidavits are to be construed, and any doubts are to be resolved in the light most favorable to the Plaintiff. *Editorial Musical Latino Americana, S.A. v. Mar International Records, Inc.,* 829 F.Supp. 62, 64 (S.D.N.Y.1993); *see also Scheuer v. Rhodes,* 416 U.S. 232, 236, 94 S.Ct. 1683, 1686, 40 L.Ed.2d 90 (1974) (on motion to dismiss pleadings are considered in light most favorable to pleader).

The acts in the complaint attributed to "P & S" are, according to Plaintiff, attributed to both Pass and Legrand. This is not a case built on notions of piercing the corporate veil. The allegation is that Legrand has independently engaged in the same allegedly wrongful behaviors. Legrand's motion to dismiss for lack of subject matter jurisdiction is denied.

■ To determine personal jurisdiction over a non-domiciliary in a federal question case, this Court applies the long-arm statute of the forum state. *See Business Trends Analysts v. Freedonia Group, Inc.,* 650 F.Supp. 1452, 1455 (S.D.N.Y.1987); *United States v. First Nat'l City Bank,* 379 U.S. 378, 381, 85 S.Ct. 528, 530, 13 L.Ed.2d 365 (1965).

New York's long-arm statute provides:

As to a cause of action arising from any of the acts enumerated in this section, a court may exercise personal jurisdiction over any non-domiciliary, or his executor or administrator, who in person or through an agent: 1. transacts any business within the state or contracts anywhere to supply goods or services in the state; or 2. commits a tortious act within the state....

N.Y.Civ.Prac.L. & R. § 302(a) (McKinney 1993) ("CPLR § 302(a)").

■ Offering one copy of an infringing work for sale in New York, even if there is no actual sale, constitutes commission of a tortious act within the state sufficient to imbue this Court with personal jurisdiction over the infringers. *See Business Trends,* 650 F.Supp. at 1455–56 (shipment of one copy into New York; actual sale not necessary); *Metropa Co. v. Choi,* 458 F.Supp. 1052, 1054 (S.D.N.Y. 1978) (trademark infringement; only New York contact of California defendant was mail order shipment of two wigs); *Honda Assocs., Inc. v. Nozawa Trading, Inc.,* 374 F.Supp. 886, 888–89 (S.D.N.Y. 1974) (trademark infringement, actual sale not necessary; only New York contact of California defendant was mail order shipment of 3 karate uniforms valued at $37). This Court has jurisdiction even if the products for sale are offered through independent brokers in New York. See CPLR 302(a) ("in person or through an agent"); *Heritage House Frame & Moulding Co. v. Boyce Highlands Furniture Co.,* 88 F.R.D. 172, 173 (E.D.N.Y. 1980).

■ Thus allegations that Legrand "has begun or is about to begin selling in ... this Judicial District the ... plugs and connectors ... [and] although [Legrand] has molded the name Pass & Seymour/Legrand into

---

1. The Supreme Court cited the Shredded Wheat case for this proposition. In that case however, the expired patent had been for the process that manufactured the "pillow shaped" wheat.

its infringing product, the name is indistinguishable except on extremely close examination" is sufficient to assert *prima facie* jurisdiction.

"While the plaintiff ultimately bears the burden of establishing the existence of jurisdiction over defendants by a preponderance of the evidence, the burden should not be imposed on the plaintiff at the pleading stage ..." *Soviet Pan Am Travel Effort v. Travel Comm. Inc.,* 756 F.Supp. 126, 130 (S.D.N.Y. 1991). In the absence of an evidentiary hearing or further factual development through discovery, the pleadings and affidavits must be construed in the light most favorable to the plaintiff. *Id.* At this stage of the proceedings, the motion is denied.

***Motion to Dismiss for Improper Venue is Denied***

 Hubbell alleged venue in this case under 28 U.S.C. § 1391(c) which reads:

For purposes of venue under this chapter, a defendant that is a corporation shall be deemed to reside in any judicial district in which it is subject to personal jurisdiction at the time the action is commenced. In a State which has more than one judicial district and in which a defendant that is a corporation is subject to personal jurisdiction at the time an action is commenced, such corporation shall be deemed to reside in any district in the State within which its contacts would be sufficient to subject it to personal jurisdiction if that district were a separate State, and, if there is no such district, the corporation shall be deemed to reside in the district within which it has the most significant contacts.

As the earlier discussion on personal jurisdiction implied, Pass is subject to personal jurisdiction in this District and thus venue as to the claims asserted against Pass is properly asserted in this District at this time. The same holds true for Legrand. Considering the pleadings before the Court, and given that neither party has plead the percentage of total sales in the District, all affidavits and pleadings are construed in the light most favorable to the Plaintiff and the motion to dismiss for lack of venue is denied on this record. *See Hoffritz,* 763 F.2d at 57; *Time Products v. Tiras Classic Handbags, Inc.,* 1994 WL 363930, *7–8, 1994 U.S.Dist. LEXIS 9483, *22 (S.D.N.Y.1994).

In addition, venue over the claims against Legrand would be proper under § 1391(d).

***Motion for Transfer is Denied at this Time***

 28 U.S.C. § 1404(a) provides:

For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought.

Factors which determine whether a case should be transferred under § 1404 are: (1) the place where the operative facts occurred; (2) the convenience to parties; (3) the convenience of witnesses; (4) the relative ease of access to sources of proof; (5) the availability of process to compel attendance of unwilling witnesses; (6) the plaintiff's choice of forum; (7) the forum's familiarity with the governing law; and (8) trial efficiency and the interests of justice. *Viacom Intern. v. Melvin Simon Prods.,* 774 F.Supp. 858, 867–68 (S.D.N.Y. 1991); *Don King Prods., Inc. v. Douglas,* 735 F.Supp. 522, 533 (S.D.N.Y.1990).

 Plaintiff's choice of forum should not be disturbed unless Defendants make a clear and convincing showing that the balance of convenience favors defendants choice. *See Time Products,* 1994 WL 363930, at *11–12, 1994 U.S.Dist. LEXIS, 9483, at *33. A transfer should not be granted "absent a clear cut and convincing showing by defendant that the balance of convenience weighs strongly in favor of the transferee court...." *Star Lines, Ltd. v. Puerto Rico Maritime Shipping Auth.,* 442 F.Supp 1201, 1207 (S.D.N.Y.1978).

 The core determination under § 1404(a) is the center of gravity of the litigation, a key test of which is the convenience of witnesses. *Saminsky v. Occidental Petroleum Corp.,* 373 F.Supp. 257 (S.D.N.Y. 1974); *Essex Crane Rental Corp. v. Vic Kirsch Const. Co.,* 486 F.Supp. 529 (S.D.N.Y. 1980); 15 Wright, Miller & Cooper, *Federal Practice & Procedure: Jurisdiction 2d* § 3851 (1986). Courts routinely transfer cases when the principal events occurred, and the principal witnesses are located, in

another district. *Viacom Intern,* 774 F.Supp. at 868; *Computer Horizons Corp. v. Knauer,* 483 F.Supp. 1272 (S.D.N.Y.1980).

While Pass has indicated that its corporate records and witnesses are in Syracuse, without further evidence of the proof required and the witnesses to be called, the balance of the evidence available at this time does not require the Court to disrupt the plaintiff's choice of forum. The motion to transfer is denied.

### Plaintiff's Motion to Dismiss Pass' Counter Claim for Tortious Interference with Prospective Economic Advantage is Denied

To state a claim under this theory, the complaint must allege that defendant interfered with business relations existing between plaintiff and a third party, "either with the sole purpose of' harming plaintiff or 'by means that are dishonest, unfair or in any other way improper.'" *Martin Ice Cream Co. v. Chipwich, Inc.,* 554 F.Supp. 933, 945 (S.D.N.Y.1983) (emphasis in original) (quoting *Robbins v. Ogden Corp.,* 490 F.Supp. 801, 811 (S.D.N.Y.1980)). Where such interference is intended "'at least in part to advance the competing interest of the interferer' the interference will be excused unless the means employed include 'physical violence, fraud or misrepresentation, civil suits and criminal prosecutions and some degrees of economic pressure; they do not, however, include persuasion alone.'" *Strapex Corp. v. Metaverpa N.V.* 607 F.Supp. 1047, 1050 (S.D.N.Y.1985) (*quoting Guard–Life Corp. v. S. Parker Hardware Mfg. Corp.,* 50 N.Y.2d 183, 428 N.Y.S.2d 628, 632, 406 N.E.2d 445, 448–49 (1980)); *Volvo N. Am. v. Men's Int'l Professional Tennis Council,* 857 F.2d 55, 74 (2d Cir.1988).

According to the counterclaim, Pass has alleged that Hubbell "either investigated the allegations made in its initial Complaint and knew that the New York City distributors had not committed any of the alleged acts of infringement or unfair competition set forth in the [original] Complaint ... or, alternatively, ... failed to properly investigate adequately the allegations ... Despite the fact that Hubbell knew or *should have*

*known that the New York City Distributors should have known that the New York City Distributors* have not purchased the plugs.... Hubbell filed its action naming the ... Distributors as defendants.... Hubbell's claims ... have injured the contractual and business relationships between the ... Distributors in that ... [they] have been improperly and falsely named as defendants."

The elements of the tort have been plead such that the motion to dismiss is denied.

### Conclusion

For the reasons discussed above all motions are denied.

It is so ordered.