**The MEAD CORPORATION, Plaintiff,**

v.

**The STUART HALL COMPANY, INC., Defendant.**

**No. C–3–86–359.**

United States District Court, S.D. Ohio, W.D.

May 29, 1987.

Armistead W. Gilliam, Jr., Dayton, Ohio, Edward W. Goldstein, Michael Macklin, Houston, Tex., for plaintiff.

B. Joseph Schaeff, Timothy W. Hagan, Dayton, Ohio, Harlan P. Huebner, Los Angeles, Cal., for defendant.

RICE, District Judge.

Before the Court is the Defendant's Motion to Dismiss or in the Alternative to Stay or Transfer (Doc. # 4). For the reasons that follow, the Defendant's motion is overruled in its entirety.

On August 8, 1986, at 3:53 p.m. Eastern Daylight Time (EDT), The Mead Corporation (Mead) filed the instant action against The Stuart Hall Company, Inc. (Stuart Hall) seeking a declaratory judgment, pursuant to 28 U.S.C. § 2201 and 2202, that the trade dress used in connection with Mead's proposed Cambridge line of stationery products does not infringe any trademark or trade dress rights of Stuart Hall. On the same day, at 3:30 p.m. Central Daylight Time (CDT) (4:30 p.m. EDT), Stuart Hall filed a similar action in the United States District Court for the Western District of Missouri, alleging that Mead's Cambridge line infringes upon Stuart Hall's registered trademark for its Executive line of stationery products. Stuart Hall's Complaint also alleged common law unfair competition and dilution of its trademark and trade dress rights. *Stuart Hall Company, Inc. v. The Mead Corporation,* No. 86–6123–CV–SJ–6.

By Memorandum and Order of November 7, 1986, Judge Howard F. Sachs of the Western District of Missouri ordered that

Stuart Hall's action be transferred to this Court. In so ruling, Judge Sachs concluded that the instant action filed by Mead was "first filed" and that in the interest of judicial economy, the first filed case should be given precedence. The transfer was stayed, however, while Stuart Hall sought, unsuccessfully, to have Judge Sachs reconsider his transfer order or to have him certify his decision for interlocutory appeal to the Court of Appeals for the Eighth Circuit. Judge Sachs denied both requests. On April 8, 1987, after Stuart Hall's Petition for a Writ of Mandamus was denied by the Eighth Circuit, Judge Sachs' Order was given effect and *Stuart Hall Company, Inc. v. The Mead Corporation*, No. 86–6123–CV–SJ–6, was transferred to the Southern District of Ohio, where it was docketed as Case No. C–3–87–184 (A copy of Judge Sach's decision is attached hereto).

Stuart Hall has moved this Court for an Order dismissing it from the instant action on the grounds that this Court lacks personal jurisdiction over it. Alternatively, Stuart Hall seeks to have this Court exercise its discretion and decline to entertain Mead's declaratory judgment action. Further in the alternative, Stuart Hall moves that the instant case be transferred to the Western District of Missouri, pursuant to 28 U.S.C. § 1404(a).[1]

## I. DISCUSSION

Stuart Hall's first argument for dismissal is that it is not subject to personal jurisdiction in Ohio. Mead's Complaint alleges that personal jurisdiction over Stuart Hall is provided by the Ohio long arm statute, Ohio Rev.Code § 2307.382, which provides in pertinent part:

[A] court may exercise personal jurisdiction over a person who acts directly or by an agent, as to a cause of action arising from the person's:

(1) transacting any business in this state.

. . . .

(B) When jurisdiction over a person is based solely upon this section, only a cause of action arising from acts enumerated in this section may be asserted against him.

The Sixth Circuit has developed a three-part test to determine whether the application of the Ohio long arm statute provides sufficient contact between a non-resident defendant and the forum state so as to support personal jurisdiction. That test provides:

First, the defendant must purposefully avail himself of the privilege of acting in the forum state or causing a consequence in the forum state. Second, the cause of action must arise from the defendant's activities there. Finally, the acts of the defendant or consequences caused by the defendant must have a substantial enough connection with the forum state to make the exercise of jurisdiction over the defendant reasonable.

*R.L. Lipton Distributing v. Dribeck Importers, Inc.*, 811 F.2d 967 (6th Cir.1987); *Welsh v. Gibbs*, 631 F.2d 436 (6th Cir.1980); *In-flight Devices Corp. v. Van Dusen Air, Inc.*, 466 F.2d 220 (6th Cir.1972).

With respect to the first stage of the analysis, whether the defendant purposefully availed himself of the privilege of acting in the forum state, the Supreme Court's recent decision in *Asahi Metal Industry Co. v. Superior Court of California, Solano County*, — U.S. —, 107 S.Ct. 1026, 94 L.Ed.2d 92 (1987), is instructive. In *Asahi Metal Industry*, the court wrote that:

The "substantial connection" between the defendant and the forum state necessary for a finding of minimum contacts must come about by *an action of the defendant purposefully directed toward the forum state*. The placement of a product into the stream of commerce, without more, is not an act of the

---

**1.** Stuart Hall's motion further sought, as an alternative to dismissal or transfer, to have this Court stay the instant action pending resolution of Stuart Hall's action against Mead in the Western District of Missouri. However, in light of

Judge Sachs' Order transferring the Missouri action to the Southern District of Ohio, a stay of the instant action is no longer a sensible or even a viable alternative.

defendant purposefully directed toward the forum state. Additional conduct of the defendant may indicate an intent or purpose to serve the market in the forum state, for example, designing the product for the market in the forum state, advertising in the forum state, establishing channels for providing regular advice to customers in the forum state, or marketing the product through a distributor who has agreed to serve as the sales agent in the forum state.

107 S.Ct. at 1033 (citations omitted) (emphasis in original).

■ From the materials attached to Stuart Hall's motion and Mead's memorandum contra,[2] there can be little doubt that Stuart Hall has purposefully availed itself of the privilege of acting in Ohio. While it is clear that Stuart Hall is not licensed to do business in Ohio and maintains no offices or property within Ohio, it is equally clear that Stuart Hall does sell its Executive product line in Ohio through manufacturer's representatives. Stuart Hall provides promotional materials to its representatives, controls the prices charged to its customers, and determines which customers are entitled to credit extensions. Further, approximately ten to twelve times during the past year and one-half, Stuart Hall executives have visited its manufacturer's representatives and accompanied the representatives on customer calls. These actions by Stuart Hall are "purposefully directed" toward the state of Ohio. *Asahi Metal Industry,* 107 S.Ct. at 1033.

The second stage of the Sixth Circuit's test requires that the cause of action arise out of the defendant's activities in the state. Mead's action is brought pursuant to the Declaratory Judgments Act and seeks a declaration that its line of stationery products does not infringe upon the registered trademark held by Stuart Hall. As indicated above, Stuart Hall sells its product within the state of Ohio, thus giving rise to Mead's declaratory judgment action.

■ Finally, the defendant's actions must have a substantial enough connection with the forum state to make the exercise of jurisdiction over the defendant reasonable. Where a defendant who purposefully has directed his activities at forum residents seeks to defeat jurisdiction, he must present a compelling case that the presence of some other considerations would render jurisdiction unreasonable. *Burger King Corp. v. Rudzewicz,* 471 U.S. 462, 477, 105 S.Ct. 2174, 2184, 85 L.Ed.2d 528 (1985). Among the factors a court may consider in determining whether the exercise of jurisdiction is reasonable are whether the defendant could foresee a foreign suit and whether the defendant has physical contacts with the forum. *In-flight Devices Corp. v. Van Dusen Air, Inc.,* 466 F.2d 220, 235 (6th Cir.1972). In light of Stuart Hall's business activities within the state of Ohio, including physical contacts within Ohio,[3] the Court concludes that Stuart Hall could reasonably have foreseen being sued in an Ohio court. The exercise of personal jurisdiction over Stuart Hall is, therefore, reasonable. Accordingly, Stuart Hall's Motion to Dismiss on the basis of lack of personal jurisdiction is overruled.

■ As an alternative to dismissal for lack of personal jurisdiction, Stuart Hall contends that this Court should exercise its discretion and decline to entertain Mead's declaratory judgment action. Among the arguments made by Stuart Hall in support of this position is that its action filed in the Western District of Missouri was filed prior to Mead's action. This argument, however, was considered and rejected by Judge Sachs when he, in ordering that Stuart Hall's action be transferred to this Court, concluded that Mead's action was first filed. This Court, based upon the reasoning and citations of authority as set forth

**2.** Among the materials attached to Mead's memorandum contra are several unauthenticated photocopies of the deposition of Jan H. Ligon. Because the Court assumes that Mead could authenticate the attached deposition if required to do so (within the meaning of Fed.R.Civ.P.

56), the Court has considered said deposition in reaching its decision.

**3.** *See supra* p. 1449 (discussion of Stuart Hall's business activity within the state of Ohio).

in Judge Sach's decision, agrees that Mead's action for declaratory judgment was the first filed.

Stuart Hall further argues that because its action filed in Missouri contains issues which are not present in the Ohio action, this Court should dismiss the instant case and permit Stuart Hall to proceed with its Missouri action. This argument, however, overlooks the fact that the Missouri action has been transferred to this Court. The two cases will be consolidated. Stuart Hall will, therefore, be able to raise all of its claims in this Court.

█ Finally, Stuart Hall argues that Mead's action was brought in anticipation of Stuart Hall's action and, therefore, it should be dismissed as an improper use of the declaratory remedy. The anticipatory use of the declaratory remedy is merely an equitable consideration which the Court may take into account. *See Ven–Fuel, Inc. v. Department of the Treasury,* 673 F.2d 1194 (11th Cir.1982); *Amerada Petroleum Corp. v. Marshall,* 381 F.2d 661 (5th Cir. 1967). *See also Grand Trunk Western Railroad Co. v. Consolidated Rail Corp.,* 746 F.2d 323 (6th Cir.1984) (one of the factors to be considered in determining whether a declaratory ruling is appropriate is "whether the declaratory remedy is being used merely for the purpose of 'procedural fencing' or 'to provide an arena for a race for *res judicata.*' "). As Judge Sachs aptly noted, "declaratory judgment actions are, by their very nature, always anticipatory in some sense." *Stuart Hall Company, Inc. v. The Mead Corporation,* No. 86–6123–CV–SJ–6 (Doc. # 17). This Court cannot conclude that Mead acted unfairly in winning the race to the courthouse, a race, incidentally, in which both parties participated. Stuart Hall's allegation that Mead acted unfairly, after having lost the race to the courthouse, is unpersuasive. Moreover, and finally, many of the cases cited by Stuart Hall as support for dismissing Mead's action involved inequitable conduct on the part of the declaratory Plaintiff or questionable personal jurisdiction, neither of which is present herein.

The Sixth Circuit in *Grand Trunk Western Railroad Co. v. Consolidated Rail Corp.,* 746 F.2d 323 (6th Cir.1984), set forth the following five factors to be considered in determining whether a declaratory ruling is appropriate:

(1) whether the declaratory action would settle the controversy;

(2) whether the declaratory action would serve a useful purpose in clarifying the legal relations in issue;

(3) whether the declaratory remedy is being used merely for the purpose of "procedural fencing" or "to provide an arena for a race for *res judicata*";

(4) whether the use of a declaratory action would increase friction between our federal and state courts and improperly encroach upon state jurisdiction; and

(5) whether there is an alternative remedy which is better or more effective.

Consideration of the above factors leads this Court to conclude that Mead's declaratory action will serve a useful purpose in clarifying and settling the legal relations in issue, to wit, whether Mead has infringed on Stuart Hall's trademark and trade dress rights. To the extent that Stuart Hall's Missouri action raised issues not present in Mead's action, those issues can easily be added as counterclaims in this Court, to the extent that consolidation of the two actions (the instant case *and* the case transferred from Missouri by Judge Sachs) will not result in all issues raised in both cases being brought before this Court. Accordingly, this Court will entertain Mead's declaratory judgment action.[4]

As an alternative to dismissal, Stuart Hall seeks to have Mead's action transferred, pursuant to 28 U.S.C. § 1404(a), to the Western District of Missouri. Section 1404(a) provides:

For the convenience of parties and witnesses, in the interest of justice, a dis-

---

**4.** Upon review of the fourth and fifth factors set forth by the Sixth Circuit in *Grand Trunk Western Railroad,* it is clear that they are inapplicable to the instant action. The third factor, whether the declaratory remedy is being used "to provide an arena for a race for *res judicata,*" has already been addressed in this decision. *See supra* p. 1450.

trict court may transfer any civil action to any other district or division where it might have been brought.

In determining whether a § 1404(a) request should be granted, *Norwood v. Kirkpatrick*, 349 U.S. 29, 75 S.Ct. 544, 99 L.Ed. 789 (1955), indicates that the factors consistently applied in *forum non conveniens* cases should be utilized, except that a lesser showing of inconvenience may be required. The Supreme Court in *Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 67 S.Ct. 839, 91 L.Ed. 1055 (1947) indicated the following criteria to be pertinent in a *forum non conveniens* consideration:

> An interest to be considered and the one likely to be most pressed, is the private interest of the litigant. Important considerations are the relative ease of access to sources of proof; availability of compulsory process for attendance of unwilling, and the costs of obtaining attendance of willing, witnesses; possibility of view of premises, if view would be appropriate to the action; and all other practical problems that make trial of a case easy, expeditious and inexpensive....
>
> ....
>
> Factors of public interest also have place in applying the doctrine. Administrative difficulties follow for courts when litigation is piled up in congested centers instead of being handled at its origin. Jury duty is a burden that ought not to be imposed upon the people of a community which has no relation to the litigation. ... There is a local interest in having localized controversies decided at home. There is an appropriateness, too, in having the trial of a diversity case in a forum that is at home with the state law that must govern the case, rather than having a court in some other forum untangle problems in conflict of laws, and in law foreign to itself.

*Id.* at 508–09, 67 S.Ct. at 843.

■ A review of the above factors and the arguments advanced by the parties convinces this Court that Stuart Hall has failed to meet its burden of establishing that transfer of Mead's action to the Western District of Missouri is warranted. Stuart Hall argues that because Mead has a facility located in St. Joseph, Missouri, which manufactures and distributes the allegedly infringing Cambridge line, it necessarily follows that "a substantial number of Mead's witnesses and documents" are physically present in the Western District of Missouri. Mead, however, directly refutes Stuart Hall's argument by an affidavit of Michael Macklin, in which Macklin indicates that all nine of Mead's potential witnesses reside within the Southern District of Ohio. Furthermore, according to Macklin's affidavit, there are no persons residing within the Western District of Missouri having information relevant to Mead's development and adoption of the Cambridge line of stationery products.

With respect to its own witnesses and documentary evidence, Stuart Hall, through a declaration of Charles G. Hansen, contends that a "substantial number of [its] principal witnesses, relative to the present action, are located in the Kansas City and the St. Joseph, Missouri areas." This generalized statement regarding the cost of obtaining the attendance of witnesses is insufficient, especially in light of Mead's affidavit (Macklin affidavit ¶ 4) setting forth Mead's anticipated witnesses, all of whom reside within the Southern District of Ohio, and the matters on which the witnesses are expected to testify.

Stuart Hall also argues that the Missouri forum would be more convenient if a view of Mead's St. Joseph facility is needed. However, nowhere within its motion papers does Stuart Hall indicate why such a view would be necessary, and this Court cannot conceive of any possible need, in a case involving trademark and trade dress infringement, for a view of Mead's manufacturing facility.

Finally, Stuart Hall cites to the statistic that for the period ending June 30, 1985, there were 4,953 pending civil cases in the Southern District of Ohio while there were 2,451 pending cases in the Western District of Missouri. Stuart Hall, without stating as much, apparently intends the statistics to lead to the conclusion that a speedier

trial is likely in the Missouri forum. Stuart Hall neglects, however, the simple fact that the instant action is scheduled for trial on July 27, 1987. Stuart Hall's action in the Western District of Missouri, prior to being transferred to this Court, had not been assigned a trial date. Thus, it would appear a quicker resolution of Mead's case will occur in this forum.

Another relevant consideration in deciding a motion to transfer pursuant to § 1404(a) is the presence of issues of foreign law. The Supreme Court in *Gulf Oil Corporation v. Gilbert* counseled that it is often appropriate to have diversity cases heard in a forum that is "at home with the state law that must govern the case, rather than having a court in some other forum untangle problems in conflict of laws, and in law foreign to itself." 330 U.S. at 509, 67 S.Ct. at 843. Mead's declaratory judgment action involves issues of federal law (trademark infringement) and, therefore, does not present any issues of foreign law. Stuart Hall's Missouri action, however, contained claims under Missouri law for unfair competition, common law trademark infringement, and dilution of trademark and trade dress rights. If Stuart Hall raises these claims by counterclaims in this Court (or should the process of case consolidation bring those issues before this Court), issues of foreign law will be presented to this Court. Stuart Hall, however, has not argued that these issues of Missouri law are unsettled or that this Court is otherwise incapable of addressing their claims. Accordingly, and in light of the preceding discussion of the factors counseling against transfer, Stuart Hall's motion to transfer is overruled.

For all of the above reasons, Stuart Hall's Motion to Dismiss, or in the Alternative to Stay or Transfer is overruled in its entirety.

This Court deems as moot the Plaintiff's Request for Expedited Discovery (Doc. # 9) and the Defendant's Request for a Stay of Discovery (Doc. # 16) pending this Court's ruling on the aforesaid motion to transfer, etc.

5. Consolidation has been ordered by separate

Counsel listed below will take note that a conference will be had, by conference call telephone communication at 4:45 p.m. (EDT) on Thursday, June 11, 1987, for the purpose of considering the effect of the consolidation of Mead's action with Stuart Hall's action (recently transferred from Missouri and docketed as Case No. C–3–87–184) on Stuart Hall's state law-based claims (i.e., whether a counterclaim is necessary or whether the process of consolidation will have succeeded in bringing all of its claims before this Court in one consolidated action), and the viability of the July 27, 1987, trial date.[5]

## APPENDIX

### IN THE UNITED STATES DISTRICT COURT

### WESTERN DISTRICT OF MISSOURI

### ST. JOSEPH DIVISION

Stuart Hall Company, Inc., Plaintiff,

v.

The Mead Corporation, Defendant.

No. 86–6123–CV–SJ–6

**MEMORANDUM AND ORDER**

SACHS, District Judge.

Plaintiff filed this suit at 3:30 p.m. Central Daylight Time on August 8, 1986, alleging common law and federal statutory trademark infringement, false designation of origin, common law unfair competition and dilution of trademark and trade dress rights. At 3:53 p.m. Eastern Daylight Time (2:53 CDT) defendant filed a declaratory judgment action in the Southern District of Ohio seeking a declaration that it was not infringing upon plaintiff's trademarks or trade dress. Defendant now seeks dismissal of this action or, alternatively, transfer of this action to the Southern District of Ohio.

It is an unfortunate waste of judicial resources and litigants' time to allow the same cause of action between identical par-

entry filed this date.

ties to proceed in two districts. The "first to file" rule seeks to avoid this result by generally requiring that, as a matter of comity, the first filed case is given precedence and subsequent suits are dismissed or stayed.

Despite plaintiff's contentions to the contrary, the Ohio action was filed prior to this one. Defendant has cited two cases, *Formaldehyde Institute, Inc. v. United States Consumer Product Safety Commission*, 681 F.2d 255 (5th Cir.1982); *Southland Mower Co. v. United States Consumer Product Safety Commission*, 600 F.2d 12 (5th Cir.1979), which at least implicitly held that "absolute time," (as opposed to "time zone" time), is used to determine which petition is filed first, and plaintiff has not demonstrated that these cases are inapplicable.[1] Moreover, plaintiff's implicit allegation that the Clerk improperly refused to file its tendered complaint on August 7, and then improperly refused to back-date the file stamp when the complaint was accepted on August 8, is not well taken. This issue was not formally presented to the court at the time of filing, and is not now squarely raised or clearly briefed.[2] The file stamp date and time actually appearing on the complaint are therefore controlling. *See Formaldehyde Institute*, 681 F.2d at 261–62 (refusal to accept challenge to file stamp time where party had failed to seek court's permission to obtain affidavit from clerk's office personnel).

Plaintiff next disputes that there is an identity of issues between this and the Ohio litigation. While plaintiff has raised claims here which have not been raised in the Ohio suit, it appears that all of plaintiff's claims arise out of the same operative facts. There is no apparent reason why these other claims could not be raised as counterclaims in the Ohio litigation and, even if there is some risk that the Ohio court might not grant leave to amend the answer and raise counterclaims,[3] this case could be stayed pending that determination or transferred to the Southern District of Ohio rather than dismissed.

The primary emphasis of plaintiff's opposition is that, even assuming the Ohio litigation was filed first, countervailing considerations warrant giving this suit priority over it. The majority of the cases cited in support of this argument are not directly on point in that they address motions to dismiss filed in a declaratory judgment action, rather than in a parallel substantive action. *E.g., Mission Insurance Co. v. Puritan Fashions Corp.*, 706 F.2d 599 (5th Cir.1983); *Ven–Fuel, Inc. v. Department of the Treasury*, 673 F.2d 1194 (11th Cir. 1982). While these cases are not irrelevant to the present inquiry, they are distinguishable in that they involve courts dismissing their own declaratory judgment actions. *Id.* A denial of the motion to dismiss in this case would effectively force the Ohio court to choose between declining to exercise jurisdiction over its first filed case and requiring the parties to litigate in two forums. The only cited case in which a motion to dismiss was filed in a subsequent substantive action is *Factors Etc., Inc. v. Pro Arts, Inc.*, 579 F.2d 215 (2d Cir.1978).

---

1. Although the cited cases are interpreting 28 U.S.C. § 2112(a), regarding proceedings originally filed in the courts of appeals, plaintiff has shown no reason why they would not be applicable by analogy to the present case.

2. Plaintiff's opposition states that "an attempt was made to file the Stuart Hall Complaint in the Kansas City Division of the United States District Court, Western District of Missouri, *one full day* prior to teh [sic] filing of Mead's declaratory judgment action in Ohio. Although the Clerk's office stated that they did not believe the Complaint averments were sufficient to allow venue in the St. Joseph Division, the *exact same complaint* was allowed to be filed in the Kansas City Division the next day, the only change

being the place of service of process (which had absolutely nothing to do with Stuart Hall's venue averments)." Whatever may have been the preliminary circumstances, the complaint was actually received for filing at the Western Division Clerk's office in Kansas City, for filing in the St. Joseph Division. The Western Division office routinely accepts filings for the other Western District Divisions, but this matter is, and has been since its initiation, a St. Joseph Division case.

3. Defendant has stated that the Ohio forum would be appropriate for all of plaintiff's claims, and I take this to mean that defendant will not oppose attempts by plaintiff to raise these claims in Ohio.

That court affirmed the trial court's decision to allow the second action to proceed based on findings that the second forum was more convenient in that related actions were pending there and that the first action was filed in apparent anticipation of the second. 579 F.2d at 218–19.

There appears to be nearly unanimous authority among the circuits for the *Factors* court's general proposition that countervailing considerations may counsel against application of the first to file rule. *E.g., Upchurch v. Piper Aircraft,* 736 F.2d 439, 440 (8th Cir.1984). There does not appear to be such universal authority for the assertion that a party may defeat application of the first to file rule simply by showing that the second forum is more convenient. Indeed, the latter concept would virtually abolish the efficiencies and certainty otherwise attributable to the rule. The more reasoned approach is that the second forum should generally follow the first to file rule and allow the first court to address the *forum non conviens* issues via a § 1404(a) motion to transfer. *Pacesetter Systems, Inc. v. Medtronic, Inc.,* 678 F.2d 93, 96 (9th Cir.1982). Similarly, the anticipatory nature of a suit, while a permissible equitable consideration in determining whether to follow the first to file rule, *Mission Insurance,* 706 F.2d at 602; *Ven-Fuel,* 673 F.2d at 1195, does not warrant allowing this case to proceed.

Declaratory judgment actions are, by their very nature, always anticipatory in some sense. As the Supreme Court noted in *Kerotest Manufacturing Co. v. C-O-Two Fire Equipment Co.,* 342 U.S. 180, 185 [72 S.Ct. 219, 222, 96 L.Ed. 200] (1952), the declaratory judgment plaintiff "is given an equal start in the race to the courthouse, not a headstart." While the court does not encourage races to the courthouse, neither is it blind to the realities that they occur, and no purpose would be served in punishing the winner simply because he won. A different result might well follow if the declaratory judgment plaintiff had affirmatively induced the substantive action plaintiff to delay filing suit so that it might gain precedence in time, *Mission Insurance,* 706 F.2d 599; *E.F. Hutton & Co. v. Cook,* 292 F.Supp. 409 (S.D.Tex.1968), but that is not the case here.[4]

Having determined that the first to file rule is applicable in this case, the sole remaining issue is whether this case should be stayed, transferred to the Southern District of Ohio, or simply dismissed. Transferring the case appears to be the most efficient method of getting plaintiff's claims (other than the federal statutory copyright issues) before the Ohio court as quickly as possible. Consistent with Eighth Circuit practice, however, the order transferring this cause will be stayed to allow an opportunity for recourse to the court of appeals prior to transfer. *In re Nine Mile Ltd.,* 673 F.2d 242, 243 (8th Cir.1982); *Technitrol, Inc. v. McManus,* 405 F.2d 84, 86 (9th Cir.1968), *cert. denied,* 394 U.S. 997 [89 S.Ct. 1591, 22 L.Ed.2d 775] (1969). Accordingly, it is hereby

ORDERED that this cause is transferred to the United States District Court for the Southern District of Ohio,[5] effective thirty

---

**4.** Plaintiff sent a letter, dated July 28, 1986, which plaintiff argues makes the *Mission Insurance* and *Hutton* cases applicable. The letter stated, in part, that "We therefore demand an immediate discontinuance of all sales of the 'CAMBRIDGE' stationery product line bearing the confusingly similar trade dress in question. We expect an oral, followed by a written, confirmation of this discontinuance no later than August 11, 1986, 3:00 p.m. PST." The letter went on to state that, within fourteen days from its receipt, plaintiff expected defendant to submit, by certified mail, all advertising or promotional literature, a complete inventory of the product line, and a timetable for destruction of all packaging bearing the allegedly infringing trade dress. The letter then closed with "We solicit your voluntary cooperation in this matter. However, failing to hear from you will be regarded as an admission of wrongdoing and an appropriate legal remedy will be initiated." This letter is more properly cognizable as the starting gun of a race to the courthouse than a good faith settlement attempt.

**5.** This cause is being transferred to the Southern District of Ohio solely because it is in the interests of justice to do so in light of the previously pending litigation in that district between these parties. This ruling therefore has no bearing on a subsequent determination by the Ohio court regarding whether both cases should be trans-

(30) days from the date of this order. Such transfer shall be further stayed indefinitely if relief is sought in the court of appeals prior to that time.

ferred back to this district on *forum non conve-* *niens* grounds.