VIACOM INTERNATIONAL,
INC., Plaintiff,

v.

MELVIN SIMON PRODUCTIONS,
INC. and Koala Productions,
Ltd., Defendants.

No. 91 Civ. 2450 (RWS).

United States District Court,
S.D. New York.

Oct. 2, 1991.

---

**16.** In its brief in opposition, plaintiff informs that it no longer relies on its claim of *prima facie* tort.

Hughes Hubbard & Reed, New York City, for plaintiff (David W. Wiltenburg and Robert Edwards, of counsel).

Kronish, Lieb, Weiner & Hellman, New York City, for defendants (William O'Brien, of counsel).

## OPINION

SWEET, District Judge.

Defendants Melvin Simon Productions, Inc. ("MSP") and Koala Productions, Ltd. ("Koala") have moved to dismiss the complaint of Viacom International, Inc. ("Viacom") pursuant to 28 U.S.C. § 2201, Rule 12(b)(2), (3) or (6), or in the alternative to transfer this action to the United States District Court for the Central District of California pursuant to 28 U.S.C. § 1404(a). Viacom has moved to enjoin a subsequently filed action. The motion to dismiss the action against Koala for lack of jurisdiction is granted. The motion to dismiss the action for declaratory relief is denied for the reasons set forth below. The motion to transfer to the United States District for the Central District of California is granted on the grounds, as set forth below, that such a transfer would serve the interests of justice.

The comprehensive and well drafted affidavits and memoranda submitted on these motions establish conclusively that the litigation between these parties has become a grudge match between parties well matched in their ability to meet the costs of litigation and to select highly skilled representation. In a day when Congress legislates reform based upon the assumption of cost and delay in civil litigation, *see* § 103(a) at the Civil Justice Reform Act of 1990, 28 U.S.C. § 471, *et seq.*, this action is paradigmatic and may demonstrate the detriment suffered by the society by an aggressive exercise of the rights granted by Congress.

### The Parties

Viacom is a Delaware corporation with a principal place of business in New York City and with an office in North Hollywood. Its principal activity is the distributing, directing and coordinating of theatrical motion pictures for exhibition on television.

MSP is an Indiana corporation with its principal place of business in Los Angeles. It has in the past financed, produced and licensed motion pictures, but has been largely inactive in that regard since 1982.

Koala is a California corporation with its only office at Beverly Hills. Its president and owner is Rudy Durand ("Durand"), and it produces music, films and commercials.

*Background and Prior Proceedings*

On September 19, 1978 MSP and Viacom entered into a licensing agreement (the "Agreement") under which MSP granted to Viacom the exclusive right, for a twenty-five year period, to license sixteen specified motion pictures (the "Pictures") for television exhibition throughout the world (with the exception of prime time network television exhibition by ABC, CBS or NBC). The Pictures had been or were to be produced by MSP, or had been acquired by MSP from the original producers. In exchange, Viacom was required to account for and pay to MSP distribution fees (calculated as specified in the Agreement) on a quarterly basis throughout the term of the Agreement. Viacom was required to account for each Picture separately.

All of the Pictures were completed by 1981, none of them was produced in New York, and all prints and tapes of the Pictures were "reproduced" by Viacom in California. One of the Pictures licensed to Viacom by MSP under the Agreement is "Tilt." In 1981, Durand and Koala brought suit in federal court in California against numerous defendants, including MSP and Viacom, asserting various federal and pendent state law claims ("Tilt I"). Tilt I was ultimately dismissed, but in the meantime Durand and Koala had reasserted their state law claims in an action in California Superior Court against MSP, Viacom and others ("Tilt II"), claiming that Durand's right to make the final edit of "Tilt" had been violated by a version of the film exhibited in theaters and on television. Pursuant to the indemnification provisions of the MSP–Viacom Agreement, MSP, through the appointment and payment of counsel (in California), provided Viacom with a defense to these litigations.

In the fall of 1990, as the trial of Tilt II was approaching, MSP and the Tilt litigation plaintiffs reached agreement on a proposed settlement for all parties. Viacom declined to the settlement agreement, and in December 1990 MSP reached a settlement with Durand and Koala that did not include Viacom as a party under which MSP agreed to pay monies to the plaintiffs and assigned to Koala any further right, title and interest in "Tilt," and Koala agreed to indemnify MSP for any post settlement liability relating to the Tilt II litigation.

Thereafter, on January 25, 1991, Viacom and two other parties (NBC and Warner Bros.), settled with the Tilt litigation plaintiffs and Viacom paid $50,000 as its share pursuant to this settlement. By letter dated March 29, 1991, on behalf of Viacom a quarterly accounting under the Agreement was rendered to MSP in which Viacom deducted $59,028.22 comprising the $50,000 settlement sum paid by Viacom, and $9,028.22 in alleged attorneys' fees based upon an indemnification claim regarding the settlement concerning "Tilt."

By letter dated April 2, 1991 on behalf of MSP, the deduction was protested and payment was demanded of the withheld funds by April 9, 1991, in default of which MSP would pursue its legal remedies.

On April 8, 1991 Viacom filed the present action against MSP seeking a declaratory judgment.

On May 6, 1991 MSP brought suit against Viacom in the Superior Court of California, County of Los Angeles, to recover the withheld $59,028.22 and for related relief (the "California Action"), which action was on May 21, 1991 removed to the United States District Court for the Central District of California. On May 24, 1991 MSP added Viacom's California counsel as defendants. A motion to remand the California Action was made by MSP on May 29, 1991 and has been stayed pending the resolution of the instant motions.

On May 6, the same day MSP brought suit in California, Viacom filed its Amended Complaint here, adding requests for two further declarations against MSP alleging that MSP has improperly "collaborated" with Koala in and as a result of the settlement of the "Tilt" litigation, and seeking declarations (a) that MSP is liable to indemnify Viacom for all costs, expenses and liabilities arising out of the "collaboration" with Koala and (b) that MSP's recent request under the Agreement to inspect and/or copy the records relating to Via-

com's distribution of the Pictures is null and void.

These motions followed and were heard and considered submitted on June 27, 1991.

*There is No Jurisdiction Over Koala*

■ Personal jurisdiction over Koala in this case is asserted under New York's long-arm statute, CPLR § 302(a). Viacom's First Amended Complaint has not alleged that Koala performed any act in New York but that it is the assignee of rights acquired under a New York contract, entered into initially by Viacom and MSP, relating to the ownership of "Tilt."

The "jurisdictional net cast by" CPLR § 302(a) subsection (1) [transacting business] "reaches only a defendant that ' "purposefully avails itself of the privilege of conducting activities within [New York], thus invoking the benefits and protections of its law." ' " *Mayes v. Leipziger,* 674 F.2d 178, 183 (2d Cir.1982), quoting *McKee Electric Co. v. Rauland–Borg Corp.,* 20 N.Y.2d 377, 382, 283 N.Y.S.2d 34, 38, 229 N.E.2d 604, 607 (1967), quoting *Hanson v. Denckla,* 357 U.S. 235, 253, 78 S.Ct. 1228, 1239, 2 L.Ed.2d 1283 (1958); *Galgay v. Bulletin Co.,* 504 F.2d 1062 (2d Cir.1974); *Don King Prod., Inc. v. Douglas,* 735 F.Supp. 522, 527 (S.D.N.Y.1990) (central question for § 302(a)(1) is whether defendant performed purposeful acts in New York in relation to the contract which is the basis upon which jurisdiction is asserted) (citations omitted).

Acquiring all rights to a twelve year old motion picture in California from a California entity does not constitute an activity equivalent to transacting business in New York.

The remaining provisions of § 302(a) are equally inapposite. Viacom does not allege that Koala committed a "tortious act within the state" [subsection 2]. Indeed, Viacom does not allege that Koala committed "a tortious act" at all, or that Koala has caused Viacom any injury, making subsection 3 inapplicable on those grounds alone. And the case does not concern real property [subsection 4].

■ Thus, New York does not even purport to exercise jurisdiction over a non-domiciliary on facts such as these. Beyond that, due process would be violated if Koala were required to litigate Viacom's claims in New York.

Koala engaged in no activity in New York. Koala settled a California litigation with a California entity and obtained all of MSP's right, title and interest in "Tilt." While some of the rights in the Picture were subject to an already extent long-term license to Viacom, and thereby entitled Koala to receive monies from Viacom, the right to receive money from an entity in New York does not constitute "transact[ing] business" within New York.

■ The question on the issue of whether a non-resident can be sued in a given locale in a given case is what the non-resident has done and whether the defendant has purposefully injected itself into the state, so that it "should reasonably anticipate being haled into court there." *World–Wide Volkswagen Corp. v. Woodson,* 444 U.S. 286, 297, 100 S.Ct. 559, 567, 62 L.Ed.2d 490 (1980). *Accord, Glass v. Harris,* 687 F.Supp. 906, 909 (S.D.N.Y.1988).

■ Viacom has also referred to principles of *in rem* jurisdiction alleging that "rights to 'Tilt' proceeds and any other rights now claimed by Koala represent intangible property having a situs in New York, as to which the courts of New York have jurisdiction to adjudicate and declare rights and duties." Viacom thus characterizes a claim that one party owes another as an *in rem* dispute, requiring the claimant to litigate on that ground alone in the state of the obligor.

■ However, under *Shaffer v. Heitner,* 433 U.S. 186, 97 S.Ct. 2569, 53 L.Ed.2d 683 (1977), all assertions of state court jurisdiction—*in personam, in rem* and *quasi in rem*—must be evaluated by the minimum contacts standard of *International Shoe Co. v. Washington,* 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95 (1945) and its progeny. Moreover, *quasi-in-rem* jurisdiction as indicated by Viacom's authorities

concerns situations where a plaintiff, seeking money from a non-resident, attaches property of the non-resident in the state, thereby obtaining jurisdiction over the non-resident to the extent that the plaintiff may satisfy its judgment out of the attached property. *See also, e.g.,* D. Siegel, *New York Practice* (2d ed. 1991) ("Siegel"), pp. 154, 158, 162–63; *quasi-in-rem* jurisdiction requires that the property be seized, attached. *See e.g.,* CPLR § 314(3); Siegel, pp. 162–63.

■ In addition, CPLR § 302(a) requires not only that the defendant have transacted business within New York or done other specified acts, but also that the cause of action sued on "arises from" that activity. *See, e.g., McGowan v. Smith,* 52 N.Y.2d 268, 437 N.Y.S.2d 643, 419 N.E.2d 321 (1981). In this case, Viacom seeks not damages for any injuries but rather declarations that Viacom does not owe Koala any money or other specified obligations. Under the principles of *Columbia Pictures Industries, Inc. v. Schneider,* 435 F.Supp. 742 (S.D.N.Y.1977), *aff'd,* 573 F.2d 1288 (2d Cir.1978), the transaction of business by a defendant in New York does not give rise to a declaratory judgment cause of action.

There, Columbia Picture Industries ("Columbia"), headquartered in New York, brought an action in New York against California residents for a declaration that Columbia had not violated the antitrust laws, breached its contract with defendants, or otherwise violated their rights in connection with a motion picture and moved to enjoin the defendants' later-brought action in California. The Honorable Morris E. Lasker denied the relief, stayed the New York declaratory action, and stated:

> Not surprisingly, long arm jurisdiction under § 302(a)(1) has typically been exercised when plaintiff has claimed an injury arising out of the defendant's transaction of business within the state ... Here, by contrast, Columbia merely seeks a declaratory judgment that it did not injure the nondomiciliary defendants. It is difficult to understand in what way a cause of action for a declaration that

plaintiff did not injure defendants "may fairly be said to have arisen" out of the defendant's transaction of business in the state ... a ... restrictive view should prevail where the plaintiff claims no injury at all from the defendants within the state business transactions. The remedial purposes of the long arm statute would not be promoted by a finding that personal jurisdiction exists here; indeed, where no injury to the plaintiff is claimed, it seems more likely that the state courts would adhere to the advice given in *McKee Electric Co.* ...

435 F.Supp. at 749–50 (citations and footnote omitted).

This analysis was specifically cited with approval by the Second Circuit in *Beacon Enters., Inc. v. Menzies,* 715 F.2d 757 (2d Cir.1983), also a declaratory judgment action. "The New York Court of Appeals' recent emphasis on the importance of the nexus requirement in applying section 301(a)(1) ... reinforces our belief that *Columbia Pictures Industries* correctly interprets New York law." 715 F.2d at 765.

Viacom's causes of action for declaratory judgments do not "arise out of" Koala's activities.

■ Viacom has noted that in the 1970's Durand made trips to New York to seek financing for "Tilt," to make a casting call, and to screen the completed film. Viacom *does not contend that its claims arise out of* these acts, but that these acts support its claim that Koala is subject to jurisdiction derivatively.

However, Viacom's claims arise not from the making of "Tilt" (in which Viacom was not involved), but rather from the relationship between the television licensee and an entity that later obtained ownership of the film by assignment. There is, at best, a "remote causal connection between defendant's forum activity and plaintiff's claim." *Martin E. Segal Co. v. Barton,* 612 F.Supp. 935, 937 (S.D.N.Y.1985).

Further, MSP assigned the ownership of "Tilt" but not the Agreement, which covers sixteen films and sets forth obligations and rights of MSP beyond the right to receive

distribution fees, warranties of MSP, and the like.

The prior acts of the third party, MSP, cannot be attributed to the defendant Koala even under Viacom's cited authorities.

In *Schenin v. Micro Copper Corp.*, 272 F.Supp. 523 (S.D.N.Y.1967), Micro had purchased all the assets of Vanura Uranium Inc., which then dissolved. Plaintiff argued that jurisdiction existed because Micro was Vanura's "successor-in-interest." *Id.* at 526. The court rejected this claim:

> Plaintiff's novel approach to the jurisdictional issue rests, in effect, on an untenable theory of involuntary, retroactive attribution. There exists no basis in law or reason to impute to Micro, for jurisdictional purposes, activities of Vanura in New York, such as they may have been.

Similarly, in *Colson Services Corp. v. Bank of Baltimore*, 712 F.Supp. 28 (S.D.N.Y.1989), the court stated:

> The general rule in such cases is that the successor-in-interest may be subject to jurisdiction based on the activities of its predecessor, but only under certain conditions not at issue in the instant case.

712 F.Supp. at 30, (citing *Schenin* and *Fehl v. S.W.C. Corp.*, 433 F.Supp. 939, 947 (D.Del.1977)).

The limited circumstances where "attribution" is appropriate set forth in *Schenin* and *Fehl* is where the two parties have merged. *See, Schenin*, 272 F.Supp. at 526; *Fehl*, 433 F.Supp. at 947, 948. In that circumstance, there is in reality no attribution of acts, because the "predecessor" and the "successor" are one and the same; the "predecessor" continues to exist as part of the "successor." In any event, a merger of corporations is a far cry from the assignment of a contract.

In *Fidelity & Casualty Co. v. Life Cos.*, 36 F.R.D. 267 (S.D.N.Y.1964), the court held:

> The complaint, read together with the attached agreement, makes it clear that each defendant became, by assignment, an active participant in a business operated in New York, both with respect to the assumption of important managerial functions and in claiming or receiving a substantial part of the profits.

. . . . .

> [I]t is clear that defendants' activities have fulfilled the requisite jurisdictional requirements.

*Id.* at 268. That is, the defendants performed under the assigned contract in New York. Jurisdiction was not based on the acts of the assignor, but of the defendants themselves. That the defendants became parties to the contract by assignment was only a background fact.

In *Applied Hydro Pneumatics, Inc. v. Bauer Manufacturing, Inc.*, 68 A.D.2d 42, 416 N.Y.S.2d 817 (2d Dep't 1979), Bauer/Electric, Inc. ("Bauer") had purchased all of the assets of Bauer Manufacturing, Inc. ("BMI"). At that time, BMI had contracts to manufacture goods, but had not performed them. Bauer then manufactured the goods. The court held that "Bauer's voluntary election to complete the contracts constituted, in effect, a *nunc pro tunc* ratification and adoption of BMI's acts in New York," and was sufficient to support jurisdiction. 68 A.D.2d at 46, 416 N.Y.S.2d at 820. What subjected Bauer to jurisdiction, was, then, not its purchase of contract rights, but its subsequent performance of the contract itself.

By their very nature, Viacom's claims against Koala, only for declarations that Viacom had not injured Koala and defining Viacom's obligations to Koala, could not arise out of in-state activity of the defendant.

Viacom has also contended that this action is different because its "basis" is MSP's "breaches" of the Agreement. However, the First Amended Complaint seeks declarations that Viacom's obligations to Koala are limited and have been fully met and that Viacom owes Koala nothing. The reasoning set forth in *Columbia Pictures* therefore remains applicable.

Moreover, the amendment of the long-arm statute in 1979 to include the conduct of "contract[ing] anywhere to supply goods or services in the state," CPLR § 302(a)(1), does not relate to this action.

For lack of jurisdiction the First Amended Complaint against Koala will be dismissed.

*MSP is Subject to Jurisdiction in New York*

■ MSP entered into the Agreement with Viacom in New York and thus transacted business here. Consistent with the relationship between the parties, New York law was selected as the law governing the Agreement. Completion of the Agreement also took place in New York after MSP sent the Agreement back to New York for final execution by Viacom. Subsequent to signing, the parties embarked on a regular course of dealing to fulfill the contract.

Entry into New York to negotiate or enter into contracts has been a weighty factor, as it must be in considering a court's exercise of personal jurisdiction over a defendant. In *Longines–Wittnauer Watch Co. v. Barnes & Reinecke, Inc,* 15 N.Y.2d 443, 261 N.Y.S.2d 8, 209 N.E.2d 68 (1965), the Court concluded that "preliminary negotiations" by "high level" personnel in New York and subsequent visits to New York by the defendant's employees "more than [met] the statutory standard" and that the New York courts were "fully justified in sustaining jurisdiction over the [defendant]." *Id.* at 457–58. The Court stated that the criterion to be applied under § 302(a)(1) was a "liberal" one. *Longines,* 15 N.Y.2d at 457, 261 N.Y.S.2d 8, 209 N.E.2d 68. *See also George Reiner & Co. v. Schwartz,* 41 N.Y.2d 648, 651, 394 N.Y.S.2d 844, 846, 363 N.E.2d 551 (1977) ("single transaction" can confer jurisdiction).

In *Liquid Carriers Corp. v. American Marine Corp.,* 375 F.2d 951 (2d Cir.1967), the Court found that "preliminary negotiations" in New York were "sufficient to meet the statutory requirement of CPLR 302(a)(1)." The defendant's visits meant that he had "purposefully entered New York state in connection with his corporation's dealings ... and caused his corporation to be protected by New York law." *Id.* at 956.

In addition, the Court held in *CutCo Indus., Inc. v. Naughton,* 806 F.2d 361, 367 (2d Cir.1986) that "choice of law provisions should not be ignored when making jurisdictional determinations," but are "relevant in determining whether a non-domiciliary 'transacted business' for CPLR 302(a)(1) purposes." *CutCo Indus.,* 806 F.2d at 367, *citing Burger King Corp. v. Rudzewicz,* 471 U.S. 462, 105 S.Ct. 2174, 85 L.Ed.2d 528 (1985). *See also Uniroyal Inc. v. Heller,* 65 F.R.D. 83, 91 (S.D.N.Y.1974) (choice-of-law clause constitutes a "significant contact" with the forum under § 302(a)(1)).

As has been noted, CPLR § 302(a)(1) also requires that the cause of action arise from a New York transaction. It has been said that "[t]his is not usually a problem when the claim is for breach of contract negotiated in New York; the claim arises from that transaction." *Weinstein, Korn & Miller,* CPLR Manual 3–16 (1990). Here, the principal issue appears to turn upon the indemnity provision of the Agreement.

The Second Circuit in *Hoffritz for Cutlery Inc. v. Amjac, Ltd.,* 763 F.2d 55, 61–62 (2d Cir.1985) has stated as follows with respect to *Beacon Enters.,* 715 F.2d at 757 and *Fontanetta v. American Board of Internal Medicine,* 421 F.2d 355 (2d Cir.1970) cited by MSP:

> By contrast [to *Beacon* and *Fontanetta* ], the case before us presents an action for breach of contract, and a defendant who has transacted substantial business under that contract in New York. We have no difficulty in holding, as we believe a New York state court would, that [plaintiff's] cause of action is sufficiently connected to defendants' transaction of business in New York to justify asserting jurisdiction over defendant in New York.

*Id.* at 61–62.

■ Finally, despite MSP's assertion that declaratory judgment claims relating to a New York contract somehow do not "arise from" the contract, regardless of the remedy sought, this action presents claims of breach of the very agreement that constituted transaction of business in New York.

*Columbia Pictures Industries, Inc. v. Schneider, supra,* 435 F.Supp. at 742, does not require otherwise. As observed by the Second Circuit in *Beacon Enters., supra,* the *Columbia* plaintiff had asserted the following slim jurisdictional basis:

> (1) negotiations between defendants' attorney/accountants and plaintiff's agents regarding other film contracts, and (2) a settlement discussion between defendants and the chairman of the plaintiff's board of directors.

715 F.2d at 765.

Indeed, the *Columbia* Court noted that the contract claim at issue arose out of a California contract, "signed in California and ... by its terms governed by California law relating to contracts 'made' within the state." 435 F.Supp. at 748. By contrast, the present contract action against MSP arises from a contract that was negotiated, completed and performed in New York and the gravamen of Viacom's claim is MSP has breached the Agreement. Therefore, MSP is subject to jurisdiction in New York.

*Discretion to Dismiss the Declaratory Judgment Claim Will Not Be Exercised*

■ As grounds for its 12(b)(6) motion, MSP characterizes this action as defensive declaratory relief and procedural gamesmanship arising from Viacom's exercise in self-help and from the filing of the action by Viacom on the last day before the expiration of MSP's self proclaimed grace period before challenging Viacom's offset.

■ Whether or not to hear a declaratory judgment action is conceded to be a matter of judicial discretion. *Great Am. Ins. Co. v. Houston General Ins. Co.,* 735 F.Supp. 581, 584 (S.D.N.Y.1990).

In *Broadview Chemical Corp. v. Loctite Corporation,* 417 F.2d 998 (2d Cir.1969), *cert. denied,* 397 U.S. 1064, 90 S.Ct. 1502, 25 L.Ed.2d 686 (1970), the Court of Appeals for the Second Circuit set forth the standards governing whether a court should entertain an action for a declaratory judgment. The court held:

> "The two principal criteria guiding the policy in favor of rendering declaratory judgments are (1) when the judgment will serve a useful purpose in clarifying and settling the legal relations in issue, and (2) when it will terminate and afford relief from the uncertainty, insecurity and controversy giving rise to the proceeding." (Citation omitted). It follows as a general corollary to this rule that if either of these objectives can be achieved, the action should be entertained and the failure to do so is in error.

417 F.2d at 1001.

Recently, in *Great Am. Ins. Co., supra,* 735 F.Supp. 581, the Honorable Peter K. Leisure dismissed an "anticipatory" declaratory judgment action, observing:

> [T]his is a classic example of a race to the courthouse. Plaintiff knew that defendant would file an action in Texas if it did not manage to file the instant action first. The Declaratory Judgment Act was not designed to countenance such procedural manipulation of forums and actions ... In fact, the misuse of the Declaratory Judgment Act to gain a procedural advantage and preempt the forum choice of the plaintiff in the coercive action militates in favor of dismissing the declaratory judgment action.

*Id.* at 586.

The facts in *Great Am. Ins. Co.* are, however, distinguishable from those in the instant action. In *Great Am. Ins. Co.,* plaintiff filed an interpleader action and obtained a temporary restraining order against defendants from filing any actions relating to the reinsurance contracts at issue. The filing of the plaintiff's action was, moreover, in response to a demand letter from the defendant notifying plaintiff that defendant was planning to commence an action in Texas. On the day before the court was scheduled to hear defendants' motion to dismiss the interpleader claims, plaintiff, amending his complaint as of right, added a declaratory judgment action against defendant. The court granted the motion to dismiss the interpleader claim, leaving pending only the declaratory judgment claim. The following day, the first day upon which it could do so following the lifting of the restraint, defendant filed its claims in Texas state court.

Thus, in *Great Am. Ins. Co.*, the declaratory plaintiff's litigation strategy actually prevented the defendant from filing its subsequently commenced action for damages by improperly filing an interpleader action and obtaining the temporary restraining order. Moreover, had plaintiff not waited to amend his complaint to include the declaratory judgment action, that claim might have been considered by the court in the hearing in which it dismissed the interpleader claims. The result of this strategy was that although the court ultimately found the declaratory plaintiff's claim to lack merit, the plaintiff still would have received the benefit of the first filed rule under a strict application of the test.

By contrast, in the instant case, MSP was not prevented from filing an action in another forum. The "race to the courthouse" found in *Great Am. Ins. Co.* was not a factor in the instant action: The California action was not filed by MSP at the time of the offset or indeed not until four weeks following the initiation of this action.

Moreover, courts have taken the realistic approach that declaratory judgments are by nature "anticipatory," and that there is a natural desire by all parties to select a preferred forum and gain the initiative of being a plaintiff. *E.g., Mead Corp. v. Stuart Hall Co.*, 679 F.Supp. 1446, 1449–50 (S.D.Ohio 1987) and have sustained first-filed declaratory judgment actions that preempted litigation by the other side. *Carter–Wallace, Inc. v. Ever–Dry Corp.*, 290 F.Supp. 735, 740 (S.D.N.Y.1968) and *Turbo Machine Co. v. Proctor & Schwartz, Inc.*, 204 F.Supp. 39, 41–42 (E.D.Pa.1962) and the Second Circuit has sought to avoid acting as umpire on "race to the courthouse" disputes, stating merely that "apparent anticipation of litigation" is an "equitable consideration" and "may be a factor" in allowing a later filed action to proceed. *Factors, Etc., Inc. v. Pro Arts, Inc.*, 579 F.2d 215, 219 (2d Cir.1978).

In *Columbia Pictures, supra,* relied upon by MSP, in deferring to a later-filed California action, the Honorable Morris E. Lasker stated:

It is important to emphasize that departure from the first-filed rule is warranted by the totality of the circumstances in this case, to wit: (1) Schneider's good faith attempts at settlement, which included sending a finally drafted proposed complaint to Columbia; (2) the minimal difference in time between the filing of the two complaints, that is, only six days; (3) the fact that the litigation has not yet proceeded in either district; (4) the desirability of according plaintiffs in anti-trust actions their choice of forum; (5) the questionable existence of in personam jurisdiction over the defendants in this court.

435 F.Supp. at 751.

Courts interpreting *Columbia Pictures* have paid attention to the court's careful instruction that all of these factors, "taken as a whole," were fundamental to the outcome. *E.g., Berisford Capital Corp. v. Central States, Southeast and Southwest Areas Pension Fund*, 677 F.Supp. 220, 225 (S.D.N.Y.1988) (refusing to extract individual factors from *Columbia Pictures*).

Here as just has been found, there is established, conventional jurisdiction in New York, and the California action was not filed by MSP at the time of the offset or indeed not until four weeks following the initiation of this action. While the relief sought is indeed defensive, *i.e.,* a declaration that the Viacom's self help was properly invoked, that alone under the circumstances presented does not rise to the level of dismissal, given the availability of MSP of § 1404 relief.

*The Action Will Be Transferred To The Central District Of California*

28 U.S.C. § 1404(a) provides:

For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought.

Factors which determine whether a case should be transferred under § 1404 are: (1) the place where the operative facts occurred; (2) the convenience to parties; (3) the convenience of witnesses; (4) the relative ease of access to sources of proof; (5)

the availability of process to compel attendance of unwilling witnesses; (6) the plaintiff's choice of forum; (7) the forum's familiarity with the governing law; and (8) trial efficiency and the interests of justice. *Don King Prods., Inc. v. Douglas*, 735 F.Supp. 522, 533 (S.D.N.Y.1990); *see also Schneider v. Sears*, 265 F.Supp. 257, 263 (S.D.N.Y.1967); *Richardson Greenshields Secur., Inc. v. Metz*, 566 F.Supp. 131, 134 (S.D.N.Y.1983). With these factors in mind, a transfer of this case to the Central District of California is appropriate.

■ The core determination under § 1404(a) is the center of gravity of the litigation, a key test of which is the convenience of witnesses. *Saminsky v. Occidental Petroleum Corp.*, 373 F.Supp. 257 (S.D.N.Y.1974); *Essex Crane Rental Corp. v. Vic Kirsch Const. Co.*, 486 F.Supp. 529 (S.D.N.Y.1980); 15 Wright, Miller & Cooper, *Federal Practice & Procedure: Jurisdiction 2d* § 3851 (1986). Courts routinely transfer cases when the principal events occurred, and the principal witnesses are located, in another district. *Computer Horizons Corp. v. Knauer*, 483 F.Supp. 1272 (S.D.N.Y.1980).

■ Here, the events at issue and almost all of the pertinent witnesses are in California. The Tilt Indemnification Claim constitutes the core of this case, and the events in issue are the settlement of the California "Tilt" litigation and related events in California. Virtually all of the relevant witnesses to these events are in California and the third-party witnesses are beyond the subpoena powers of this court but not of a court in California. Indeed, even the attorneys who represented Viacom in its ultimate settlement of the "Tilt" litigation and in the indemnification dispute with MSP are in California.

These same considerations apply to Viacom's remaining claims, regarding the alleged improper collaboration between MSP and Koala. The "collaborators" are in California; the events alleged to evidence the improper collaboration occurred in California; the witnesses to these events are in California.

■ That the claims may be governed by New York law is not dispositive. Although a case normally should be tried in a forum at home with the governing law, *Ferens v. John Deere Co.*, 494 U.S. 516, 110 S.Ct. 1274, 108 L.Ed.2d 443 (1990), this is just one of several factors to consider on a motion to transfer and in some circumstances may be accorded little weight, *Vassallo v. Niedermeyer*, 495 F.Supp. 757, 760 (S.D.N.Y.1980); 15 Wright, Miller & Cooper, *supra*, § 3854. Where, as here, the operative facts of the case have little connection with the district where the suit is pending, this factor is outweighed, and plaintiff's forum choice is weakened. *Arrow Electronics, Inc. v. Ducommun, Inc.*, 724 F.Supp. 264, 267 (S.D.N.Y.1989); *Vassallo*, 495 F.Supp. at 760.

■ An action can be transferred to another district if it could have been brought in the transferee district in the first instance. That is, the defendants must have been amenable to personal jurisdiction in the transferee district and venue must be appropriate there. *American Tel. & Tel. Co. v. Milgo Electronic Corp.*, 428 F.Supp. 50, 52 (S.D.N.Y.1977). The Central District of California satisfies both of these requirements. Personal jurisdiction existed over both MSP and Koala in California at the time this suit was initiated as their principal places of businesses are in or near Los Angeles. And, since subject matter jurisdiction is founded solely on diversity of citizenship and the defendants are subject to personal jurisdiction in California, venue in the Central District is proper pursuant to 28 U.S.C. § 1391(a)(3).

Viacom has cited the presence of its distribution records on "Tilt," of unspecified volume, in New York. But these records relate to but one of Viacom's claims against MSP. With regard to MSP's request to review these records, should it be determined that a review is proper and the contents of the records become material, it might well be appropriate, given MSP's positions of these motions, to have any such inspection conducted in New York. The bicoastality of Viacom weakens its position with respect to its records which it

maintains in any case are not subject to MSP's inspection. In support of the conclusion that the center of gravity of this dispute is Los Angeles, Viacom concedes that the events underlying its claims of an improper "collaboration" between MSP and Koala all occurred in California.

It is, therefore, appropriate to transfer this action to the Central District of California.

*Conclusion*

The action against Koala is dismissed for lack of jurisdiction. The motion to dismiss Viacom's claims as an improper defensive declaratory judgment proceeding is denied. The motion to transfer the action is granted.

It is so ordered.